108 F.3d 1065
 44 ERC 1373, 27 Envtl. L. Rep. 20,910,
97 Cal. Daily Op. Serv. 1675,
97 Daily Journal D.A.R. 3165
 ALASKA WILDLIFE ALLIANCE; American Wildlands, Plaintiffs-Appellants,
v.
Marvin JENSEN, Superintendent, Glacier Bay National Park and
Preserve; Boyd Evison, Regional Director, National Park
Service; James Ridenour, Administrator, National Park
Service; Manuel Lujan, Secretary, U.S. Department of the
Interior; National Park Service, Defendants-Appellees,
and
Holland American Line-Westours, Inc.; Allied Fishermen of
Southeast Alaska, Defendants-Intervenors-Appellees.
ALASKA WILDLIFE ALLIANCE; American Wildlands, Plaintiffs-Appellees,
v.
Marvin JENSEN, Superintendent, Glacier Bay National Park and
Preserve; Boyd Evison, Regional Director, National Park
Service; James Ridenour, Administrator, National Park
Service; Manuel Lujan, Secretary, U.S. Department of the
Interior; National Park Service, Defendants,
Holland American Line-Westours, Inc., Defendant-Intervenor,
and
Allied Fishermen of Southeast Alaska, Defendant-Intervenor-Appellant.
 Nos. 95-35151, 95-35188.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 16, 1996.
Decided March 6, 1997.
 
 Geoffrey Y. Parker, Anchorage, Alaska, Thomas E. Meacham, Anchorage, Alaska, for the plaintiffs-appellants-cross-appellees.
 Robert L. Klarquist, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 Bruce B. Weyhrauch, Faulkner, Banfield, Doogan & Holmes, Juneau, Alaska, for the defendant-intervenor-appellee-cross-appellant.
 Appeals from the United States District Court for the District of Alaska, H. Russel Holland, District Judge, Presiding. D.C. No. CV-90-00345-HRH.
 Before: WRIGHT, SCHROEDER and KLEINFELD, Circuit Judges.
 OPINION
 EUGENE A. WRIGHT, Circuit Judge.
 
 
 1
 We must decide the extent to which federal statutes restrict commercial fishing in Alaska's Glacier Bay National Park (the Park). We hold that plaintiffs Alaska Wildlife Alliance and American Wildlands have standing to challenge commercial fishing in the Park's waters. We further hold that commercial fishing is statutorily prohibited in the Park's designated wilderness areas, but not in its non-wilderness areas.I
 
 
 2
 Plaintiffs sued the Secretary of the Interior and officials of the National Park Service, claiming that commercial fishing in the Park violates certain federal statutes.[1] Plaintiffs interpret the Organic Act,[2] which created the national park system, and the Alaska National Interest Lands Conservation Act[3] ("ANILCA") to prohibit commercial fishing throughout the Park. The Park Service concedes that commercial fishing is prohibited by statute in the Park's wilderness areas.[4] It maintains, however, that the statutes give it discretion to permit commercial fishing in non-wilderness areas. The Allied Fishermen of Southeast Alaska (the Fishermen), an association of commercial fishers, intervened to defend its interests. It argues that plaintiffs lack standing and that commercial fishing is permitted throughout the Park.
 
 
 3
 The district court concluded that plaintiffs have standing and that commercial fishing is statutorily prohibited only in wilderness areas of the Park. Plaintiffs appeal the determination that commercial fishing is permitted in non-wilderness areas of the Park. The Fishermen cross-appeal the court's findings that appellants have standing and that federal law prohibits commercial fishing in the Park's wilderness areas. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 II
 A. Standing
 
 4
 We review de novo whether a party has standing. Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1395 (9th Cir.1992). An organization may bring an action on behalf of its members if: (1) the individual members would have standing to sue; (2) the organization's purpose relates to the interests being vindicated; and (3) the claims asserted do not require the participation of individual members. Id. The Fishermen challenge only plaintiffs' ability to meet the first requirement of organizational standing. The individual members have standing if they can demonstrate (1) an actual or threatened injury that (2) is fairly traceable to the challenged action such that (3) it is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).
 
 
 5
 The individual members of the plaintiff organizations would have standing. First, they have shown injury. The experiences recounted in their affidavits demonstrate aesthetic and recreational harm that will support standing.[5] See Sierra Club v. Morton, 405 U.S. 727, 734, 92 S.Ct. 1361, 1365-66, 31 L.Ed.2d 636 (1972); Fund for Animals, 962 F.2d at 1396. Affiants P.L. Brown and Kin Behrens wrote that the noise, trash and wakes of vessels in the Park have diminished their enjoyment. Brown described seeing "sea lions in the bay with huge trolling lures hanging from their mouths." Karen Jettmar, a former back country ranger in the Park, expressed concern over the vessels' displacement of whales from preferred feeding areas and described how she now plans her visits to the Park to avoid the fishermen's presence. And Wayne Hall wrote that the wake from vessels in the bay endangered kayakers.
 
 
 6
 Next, plaintiffs offer sufficient proof that their injuries are traceable to commercial fishing. At the summary judgment stage, factual allegations in support of standing are taken as true. Lujan, 504 U.S. at 561, 112 S.Ct. at 2136-37. Plaintiffs need only plead facts that, taken as true, would show that commercial fishing caused their injuries. We find their affidavits about injuries sufficient.
 
 
 7
 Finally, their injuries are likely to be redressed by a favorable ruling. The Fishermen argue that plaintiffs cannot meet this requirement because they challenge agency regulation of a third party. See Lujan, 504 U.S. at 568-70, 112 S.Ct. at 2140-42 (discussing difficulty of proving redressability when the plaintiff's relief depends upon a third party's reaction to agency action). This case does not present the problems that the Fishermen identify. A finding in plaintiffs' favor, that commercial fishing is statutorily prohibited in Glacier Bay, would result in the elimination of commercial fishing in the relevant areas. This would redress plaintiffs' claimed injuries.
 
 
 8
 B. Commercial Fishing in Glacier Bay Wilderness
 
 
 9
 We review questions of statutory interpretation de novo, but will defer to the agency's interpretation unless it contravenes the express language of the statute or clear congressional intent. Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984); Conlan v. United States Dept. of Labor, 76 F.3d 271, 274 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996).
 
 
 10
 ANILCA designates roughly 2.77 million acres of the Park as "wilderness" to be administered under the Wilderness Act, 16 U.S.C. § 1131 et seq, unless otherwise provided by ANILCA. Greater protections apply to wilderness areas than to ordinary park lands. In pertinent part, the Wilderness Act bans commercial enterprise from wilderness areas: "Except as specifically provided for in this chapter, and subject to existing private rights, there shall be no commercial enterprise ... within any wilderness area designated by this chapter...." 16 U.S.C. § 1133(c). The court held that this provision bans commercial fishing in Glacier Bay's wilderness areas, and the Park Service agrees with this interpretation.
 
 
 11
 The Fishermen argue that two provisions exempt commercial fishing from the Wilderness Act's ban on commercial activity. The first is a section of the Wilderness Act that allows motorized vessels in wilderness areas "where these uses have already become established." 16 U.S.C. § 1133(d)(1). This provision is of no use to the Fishermen. Their use of motorboats is not at issue; it is fishing for profit that the Wilderness Act prohibits. This they may not do, whether from motorized vessels or otherwise.
 
 
 12
 Next, the Fishermen cite a section of ANILCA that provides:
 
 
 13
 On all public lands where the taking of fish and wildlife is permitted in accordance with the provisions of this Act or other applicable State and Federal law, the Secretary shall permit ... the continuance of existing uses, and the future establishment, and use, of temporary campsites, tent platforms, shelters, and other temporary facilities and equipment directly and necessarily related to such activities.
 
 
 14
 16 U.S.C. § 3204(a). The Fishermen interpret this provision to require that all "existing uses" of park resources be allowed to continue. The plain language of ANILCA does not support this interpretation, and the Park Service's contrary interpretation requires deference.
 
 
 15
 The court correctly held that ANILCA and the Wilderness Act prohibit commercial fishing in the Park's wilderness areas.[6]
 
 
 16
 C. Commercial Fishing in the Park Non-Wilderness Areas
 
 
 17
 Plaintiffs argue that the Organic Act and ANILCA prohibit commercial fishing throughout the Park. The Park Service and the Fishermen interpret the statutes to give the Park Service discretion to permit or to prohibit commercial fishing in non-wilderness areas of the Park. In the absence of an explicit statutory directive, we must defer to the Park Service's interpretation if it is "permissible" in light of the available evidence of congressional intent. Chevron, 467 U.S. at 843, 104 S.Ct. at 2781-82. The question before us is not which interpretation we prefer, but whether the Park Service's interpretation is reasonable. Chugach Alaska Corp. v. Lujan, 915 F.2d 454, 457 (9th Cir.1990). Because the Park Service is charged with administering the statutes at issue, we must find its interpretation reasonable "unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction." Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) (footnote omitted).
 
 1. Statutory Directive
 
 18
 No statute expressly prohibits commercial fishing in the Park's non-wilderness areas or demonstrates clear congressional intent to restrict the Park Service's discretion to permit commercial fishing. We discuss each of the statutes on which plaintiffs rely for their contrary view.
 
 
 19
 a. Organic Act
 
 
 20
 The Organic Act, 16 U.S.C. § 1 et seq., governs all national parks. The Act gives the Secretary of the Interior authority to "make and publish such rules and regulations as he may deem necessary or proper for the management of the parks, monuments, and reservations under the jurisdiction of the National Park Service." 16 U.S.C. § 3.[7] The Act defines the scope of the Secretary's delegated authority as follows:
 
 
 21
 The authorization of activities shall be construed and the protection, management, and administration of these areas shall be conducted in light of the high public value and integrity of the National Park System and shall not be exercised in derogation of the values and purposes for which these various areas have been established, except as may have been or shall be directly and specifically provided by Congress.
 
 
 22
 16 U.S.C. § 1a-1. Thus, the Secretary may not exercise his authority to the detriment of the Act's purpose, which is "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1.
 
 
 23
 Plaintiffs argue that the Secretary's failure to prevent commercial fishing in the Park derogates the Act's purpose of conservation and therefore violates an express statutory directive. We disagree. Whether conduct derogates long-term goals of conservation is a factual question that we are not prepared to reach. In the absence of a specific congressional statement that commercial fishing derogates the Act's goals, there is no reason to conclude that the Secretary's failure to prohibit commercial fishing violates the Act. Had Congress intended to prohibit commercial activity in national parks, it could have used the same clear language used in the Wilderness Act when it amended the Organic Act in 1970 and 1978. Pub.Ls. 91-383 (Aug. 18, 1970), 95-581 (Mar. 27, 1978).
 
 
 24
 b. ANILCA
 
 
 25
 Plaintiffs rely on three separate provisions of ANILCA, which allocated federal lands in Alaska and created the Alaskan national parks. First, they cite 16 U.S.C. § 410hh-2, which provides that the Secretary must administer Alaska's parks pursuant to 16 U.S.C. §§ 1, 2 and 4. Because we conclude that the Organic Act, 16 U.S.C. § 1, does not prohibit commercial fishing, this provision adds nothing to plaintiffs' argument.
 
 
 26
 Next, plaintiffs rely on 16 U.S.C. § 410hh-4, which directs the Secretary to permit commercial fishing in certain areas of the Park: Cape Krusenstern National Monument, the Malaspina Glacier Forelands, and Dry Bay. In these areas, "the Secretary may take no action to restrict unreasonably the exercise of valid commercial fishing rights or privileges obtained pursuant to existing law." 16 U.S.C. §§ 410hh-4. Plaintiffs interpret this as an exception to a general statutory ban, but the language of the provision does not support that interpretation. Its plain meaning is that the Park Service may not prohibit commercial fishing in the designated areas. It implies therefore that the Park Service may prohibit fishing elsewhere, not that commercial fishing is statutorily prohibited elsewhere. If the Park Service lacked discretion to regulate commercial fishing in other areas, this provision would not have been phrased in terms of what the Secretary must do. It would have just exempted the listed areas from the statutory ban.
 
 
 27
 The final section on which plaintiffs rely provides:
 
 
 28
 The taking of fish and wildlife in all conservation system units, and in national conservation areas, national recreation areas, and national forests, shall be carried out in accordance with the provisions of this Act [ANILCA] and other applicable State and Federal law. Those areas designated as national parks or national park system monuments in the State shall be closed to the taking of fish and wildlife, except that--
 
 
 29
 * * *
 
 
 30
 (2) fishing shall be permitted by the Secretary in accordance with the provisions of this Act and other applicable State and Federal law.
 
 
 31
 16 U.S.C. § 3202(c). By its plain terms, this provision permits fishing in national parks and monuments to the extent already permitted under applicable law. We have already concluded that applicable statutory law permits commercial fishing in the Park. This provision does not prohibit it.
 
 
 32
 Our reading does not make subsection (2) superfluous. Subsection (2) fulfills two purposes: it excludes hunting from national parks and monuments, and it restricts the scope of section 3202(c). The general rule, as expressed in section 3202(c), is that national parks and monuments are not open to subsistence uses. However, other provisions of ANILCA permit subsistence fishing in certain national parks and monuments. See 16 U.S.C. § 410hh-2. Thus, subsection (2) harmonizes section 3202(c)'s general prohibition with statutes that permit subsistence fishing.
 
 
 33
 No statute expressly contradicts the Park Service's position that it has discretion to permit commercial fishing in non-wilderness areas of the Park.[8]
 
 2. Congressional Intent
 
 34
 Other indicia of congressional intent support the Park Service's interpretations of the Organic Act and ANILCA. For example, some statutes creating national parks before 1936 expressly prohibited commercial fishing. See, e.g., 16 U.S.C. § 43 (1890) (Sequoia National Park); 16 U.S.C. § 395c (1930) (Hawaii National Park).[9] Once Congress passed the Federal Register Act, 44 U.S.C. § 1501 (1935), permitting agencies to publish regulations, it never again included an express prohibition on commercial fishing in a statute creating a new park. This change indicates that Congress intended the Secretary to regulate commercial fishing. Indeed, immediately following passage of the Federal Register Act, the Park Service began to do so. See 1 Fed.Reg. 674 (June 27, 1936) (prohibiting commercial fishing in all national parks); see also 6 Fed.Reg. 1627 (March 26, 1941) (exempting Glacier Bay National Monument from prohibition). In the fifty years during which the Park Service has regulated commercial fishing, Congress has intervened only to identify parks where the Park Service may not prohibit it. See, e.g., 16 U.S.C. § 410hh-4.
 
 
 35
 Plaintiffs argue that Congress's 1978 amendment to the Organic Act was intended to reprimand the Park Service for permitting commercial fishing in national parks. See Pub.L. 95-250 (Mar. 27, 1978) (prohibiting the Secretary from authorizing activities "in derogation of the values and purposes for which" the parks were created), codified at 16 U.S.C. § 1a-1. The legislative history does not support plaintiffs' reading. Congress added the "derogation" language when it expanded the Redwood National Park. The House Report describes this language as assuring that "management of these areas shall not compromise these resource values except as Congress may have specifically provided. Thus, the Secretary is to afford the highest standard of protection and care to the lands within the Redwood National Forest." 1978 U.S.C.C.A.N. 463, 467-68 (quoting from H.R. No. 95-581). The legislative history therefore refutes plaintiffs' assertion that Congress had fish in mind when it added that language.[10]
 
 
 36
 We need not establish conclusively that Congress intended to delegate the authority to regulate commercial fishing. We need only search for "compelling indications" that it did not, Red Lion Broadcasting, 395 U.S. at 381, 89 S.Ct. at 1801-02, for only then may we reject the Park Service's interpretation.
 
 3. Deference to Agency Interpretation
 
 37
 Having found the Park Service's interpretation reasonable, we must defer to it. Plaintiffs argue that deference is not warranted because the Park Service has adopted its interpretation of the statute solely for the purpose of the litigation or has recently reversed a prior interpretation. See Seldovia Native Ass'n v. Lujan, 904 F.2d 1335, 1345 (9th Cir.1990). On the contrary, the Park Service's interpretation accords with its previous statements on this issue. As discussed above, immediately following passage of the Federal Register Act in 1935, the Secretary prohibited commercial fishing in all national parks. 1 Fed.Reg. at 674 (June 27, 1936). In 1941, the Secretary promulgated rules exempting certain parks from that ban. 6 Fed.Reg. at 1627 (March 26, 1941). If he had interpreted the Organic Act to prohibit commercial fishing, he would have found the 1936 regulation unnecessary and the 1941 regulation unlawful.
 
 
 38
 No regulation states or implies that commercial fishing is statutorily prohibited in national parks. Plaintiffs rely particularly on a 1983 regulation that prohibits commercial fishing "except where specifically authorized by Federal statutory law." 48 Fed.Reg. 30252, 30283 (June 30, 1983). Plaintiffs interpret this as an acknowledgment by the agency that only Congress can permit commercial fishing. We read that provision to mean that commercial fishing is prohibited by regulation except where a specific statute deprives the agency of the power to prohibit commercial fishing, e.g., 16 U.S.C. § 230d (providing that the Secretary must permit commercial fishing in the Barataria Marsh Unit of Jean LaFitte National Historical Park).
 
 
 39
 Similarly, no regulation has found that commercial fishing derogates park values and purposes. The 1983 regulations discuss the "derogation" language of 16 U.S.C. § 1a-1 and list activities that could be prohibited, such as "timber harvesting, mining, or the construction or use of unauthorized dams, roads and airports." 48 Fed.Reg. at 30253. The listed activities do not include commercial fishing and are unlike commercial fishing in that they all impose permanent or long-term physical changes on the land.
 
 
 40
 Plaintiffs rely on regulations proposed in 1991, but never adopted, that would have phased out commercial fishing by 1998. These proposals refer to commercial fishing as a "nonconforming use" of park lands. 56 Fed.Reg. 37262, 37263 (Aug. 5, 1991). Plaintiffs place particular reliance on this statement in arguing that the agency interpreted the Organic Act to forbid commercial fishing prior to commencing this litigation. However, there is no reason to suppose that "nonconforming" means "in derogation of park values and purposes." The 1991 proposed regulation acknowledges that continuation of commercial fishing requires a finding that it is not in derogation of park values and purposes, but does not make a finding on that issue. 56 Fed.Reg. at 37262. In explaining why commercial fishing fails to "conform," the proposed regulations cite a regulatory ban on commercial activities, 36 C.F.R. § 5.3, and a 1978 internal management policy. 56 Fed.Reg. at 37263. These statements may support plaintiffs' claims (not at issue here) that commercial fishing in the Park violates a regulation, but they do not support a finding that the agency has consistently interpreted the Act to prohibit commercial fishing.
 
 
 41
 Finally, plaintiffs cite two legal memoranda submitted by the Justice Department, as counsel for the Park Service, in a prior federal action. Memorandum in Support of Summary Judgment and Reply in Support of Summary Judgment, N.R.A. v. Arnett, No. 84-1348 (D.D.C.1984). These memoranda refer to the agency's "consistent" position that commercial activities, such as trapping, should not be permitted in the parks. We read them as referring to the agency's consistent regulation against such activities, not to a statutory prohibition. Further, long-standing limits on applying the doctrine of estoppel to the government preclude us from binding the Park Service to a broad reading of the memoranda.
 
 
 42
 No statement cited by plaintiffs indicates that the Park Service has deviated from its current interpretations of the Organic Act and ANILCA. We find no reason to abandon the deference that Chevron mandates.
 
 4. Case Law
 
 43
 Contrary to plaintiffs' assertion, no case has held that the Organic Act prohibits hunting, trapping or fishing in national parks. Some cases have held that the Organic Act permits the Secretary to prohibit these activities. See Michigan United Conservation Clubs v. Lujan, 949 F.2d 202 (6th Cir.1991) (upholding Park Service regulation against trapping in national park; the agency's decision that trapping would derogate park purposes not arbitrary and capricious); Organized Fishermen of Florida v. Hodel, 775 F.2d 1544 (11th Cir.1985) (upholding regulatory restriction on fishing in Everglades National Park; no statute expressly permitted fishing in that park, so Congress had not limited Secretary's discretion to prohibit it), cert. denied, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986); National Rifle Ass'n v. Potter, 628 F.Supp. 903 (D.D.C.1986) (finding that regulatory ban on hunting and trapping in particular parks was not arbitrary and capricious because nothing in the Act clearly permits hunting and trapping in all national parks).
 
 
 44
 These cases support the result we reach by recognizing the broad discretion that the Organic Act confers on the Park Service and the deference courts owe to the Park Service's interpretation of the statute it administers. See also Bicycle Trails Council of Marin v. Babbitt, 82 F.3d 1445, 1452 (9th Cir.1996) (interpreting Organic Act to give Park Service authority to close mountain bike trails; agency finding that trails would endanger park values was not arbitrary and capricious); Conservation Law Found. of New England v. Secretary of the Interior, 864 F.2d 954 (1st Cir.1989) (holding that Park Service could permit limited use of offroad vehicles on national seashore); Wilderness Public Rights Fund v. Kleppe, 608 F.2d 1250, 1254 (9th Cir.1979) (holding that Park Service could allocate more permits to commercial river guides than to users experienced enough to run river on their own), cert. denied, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980); Sierra Club v. Andrus, 487 F.Supp. 443, 448 (D.D.C.1980) (finding that Park Service enjoys discretion to determine how to protect park resources, so that his failure to exercise water rights is subject to deferential review), aff'd 659 F.2d 203 (D.C.Cir.1981).
 
 III
 
 45
 The district court properly held that plaintiffs have standing to challenge commercial fishing in the Park. Moreover, it properly held that commercial fishing is statutorily prohibited only in the Park's designated wilderness areas. Neither an express statutory directive nor compelling evidence of clear congressional intent contradicts the Park Service's interpretations of the statutes at issue.
 
 
 46
 AFFIRMED.
 
 
 47
 SCHROEDER, Circuit Judge, concurring.
 
 
 48
 I concur in all of the majority opinion except Part II.C.2, dealing with Congressional Intent. With respect to the non-wilderness areas of Glacier Bay National Park, we today decide only that commercial fishing is not expressly prohibited by statute. The Secretary's proposed regulations are not before us, nor is any question of the limits of the Secretary's discretion to permit commercial fishing.
 
 
 49
 In my view, the legislative history contains strong indications that Congress considered consumptive use of resources to be generally prohibited in national parks, and that by making Glacier Bay a national park in 1980, Congress intended that commercial fishing be phased out in the park. The key committee report noted that "[s]ince the establishment of the National Park System in 1916, the consumptive use of wildlife resources within National Parks and National Monuments has been prohibited. Such units have traditionally been viewed as wildlife sanctuaries for the nonconsumptive enjoyment of the American public." S.Rep. 96-413, at 168 (1980), reprinted in 1980 U.S.C.C.A.N. at 5070, 5112.
 
 
 50
 Consistent with this background understanding, the committee stated that "Glacier Bay National Park [is] intended to be [a] large sanctuar[y] where fish and wildlife may roam freely, developing their social structures and evolving over long periods of time as nearly as possible without the changes that extensive human activities would cause." Id. at 137, reprinted in 1980 U.S.C.C.A.N. at 5081. Continued commercial fishing is inconsistent with the concept of a sanctuary.
 
 
 51
 Congress' treatment of the Dry Bay area, where it explicitly intended commercial fishing to continue, is also instructive. Congress designated those units where commercial fishing was to continue as "preserves," rather than as part of the Park itself, indicating congressional understanding that commercial fishing is inconsistent with those uses generally permitted in national parks. Id. at 164, reprinted in 1980 U.S.C.C.A.N. at 5108 ("The preserve is to be managed in the same manner as the park, except that hunting and trapping may be allowed ... [and] the existing commercial fishing operations are allowed to continue."); see also H.R.Rep. 95-1045, pt. 1, at 95 (1978) (noting that the House committee excluded Dry Bay from the proposed park addition "so that active commercial fishing operations would be located outside the Park boundaries."). Speaking of the three areas where commercial fishing was to be permitted to continue, including Dry Bay, the Senate committee noted that "[i]n all three units the actual fishing takes place offshore in the ocean, outside of the units." S.Rep. 96-413 at 172, 1980 U.S.C.C.A.N. at 5116. By referring to "all three units" where commercial fishing was "to continue," the committee indicated its understanding that commercial fishing would not continue elsewhere.
 
 
 52
 Notwithstanding its understanding that commercial fishing was inconsistent with the values and purposes of national parks, however, Congress also indicated its intent that existing uses, where inconsistent, be phased out rather than abruptly terminated. The committee noted that
 
 
 53
 [w]hen establishing new units of the National Park System the Congress has had a long-standing traditional practice of reviewing those values and activities within new units which, if immediately curtailed, might result in substantial hardships to the local residents of the area. Consequently, in appropriate instances certain ... activities have been phased out of such units gradually, rather than terminated immediately at the time of establishment of the unit.
 
 
 54
 S.Rep. 96-413 at 168, 1980 U.S.C.C.A.N. at 5112. Congress' intent that existing uses be phased out to avoid hardship, as well as its intent that certain subsistence and sport uses be permitted to continue, see, e.g., 16 U.S.C. §§ 3126, 3201, explain the absence of an immediate statutory ban on commercial fishing within the Park.
 
 
 55
 Today's decision is limited to the question the district court decided, whether federal statutes contain an immediate prohibition on all commercial fishing in the park. It should not be interpreted as an endorsement of unfettered agency discretion to permit commercial fishing in the Park.
 
 
 
 [1]
 All other claims were dismissed by stipulation of the parties
 
 
 [2]
 16 U.S.C. §§ 1 et seq
 
 
 [3]
 16 U.S.C. §§ 3101 et seq
 
 
 [4]
 The Park Service also concedes that service-wide regulations prohibit commercial fishing in national parks, except where statutes require the Secretary to permit commercial fishing. See 36 C.F.R. §§ 2.3(d)(4), 5.3. These regulations have not been enforced in the Park, see 36 C.F.R. § 13.65(b), and the Park Service's failure to enforce them is not at issue here
 
 
 [5]
 The Fishermen ask us not to rely on the affidavits because they were submitted with plaintiffs' reply brief in the district court. However, plaintiffs were not required to submit the affidavits before their standing was challenged. If the Fishermen wanted a chance to respond to the affidavits, it could have moved to file a surreply. It has waived this objection
 
 
 [6]
 We do not address the Fishermen's argument, raised for the first time in its reply brief, that the Glacier Bay Wilderness is subject to state jurisdiction. Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.1990)
 
 
 [7]
 The Organic Act created the Park Service, 16 U.S.C. § 1, to administer the national park system under the Secretary's direction. See Universal Interpretive Shuttle Corp. v. Wash. Metropolitan Area Transit Comm., 393 U.S. 186, 187 n. 1, 89 S.Ct. 354, 356 n. 1, 21 L.Ed.2d 334 (1968)
 
 
 [8]
 In their arguments to the district court, plaintiffs relied on two provisions that they do not cite here: 16 U.S.C. §§ 3201 and 3126. To the extent that we must address them, we find in them no express prohibition on commercial fishing in the Park. They relate to subsistence and sport fishing
 
 
 [9]
 Of course, if the Organic Act of 1916, 16 U.S.C. §§ 1 et seq., had prohibited commercial fishing in all national parks, these provisions would have been unnecessary
 
 
 [10]
 Plaintiffs base several other arguments on legislative history. The probative value of such arguments is extremely limited. For example, plaintiffs rely for their interpretation of the Organic Act on a comment by Representative Breaux during the debates on ANILCA. He stated that "in pure park you can go camping; you can go hiking; you can take pictures of birds; you can watch birds; but you cannot do any commercial fishing or you cannot do any wildlife management in the way that you can in a wildlife refuge." 125 Cong.Rec. 11166 (May 15, 1979). This comment lacks probative value for a number of reasons. First, it is not part of the legislative history of the Organic Act. Second, it is not clear whether Mr. Breaux meant a "pure park" to be a national park or a wilderness area. The preceding dialogue concerned allocating land as a wilderness area, where mining for hard minerals might not be permitted. Id. at 11165. Third, Mr. Breaux may have been referring to regulatory prohibitions on commercial fishing; he did not state that it was statutorily prohibited. And finally, another representative responded to Mr. Breaux by saying "I do not think that is an accurate account of the law. It is not accurate in terms of a statement, so that is not a true reflection of what the situation is." Id. at 11166 (comment of Mr. Vento)