Ned Preston **DELANCY,** Petitioner–Appellant,

v.

Joseph **CRABTREE,** Warden, FCI Sheridan; Edward F. Reilly, Chairman, U.S. Parole Commission, Respondents–Appellees.

No. 97–35270.

United States Court of Appeals, Ninth Circuit.

Submitted* Aug. 4, 1997.

Decided Nov. 19, 1997.

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Stephen R. Sady, Chief Deputy Federal Public Defender, and Wendy Rae Willis, Assistant Federal Public Defender, Portland, Oregon, for petitioner-appellant.

Thomas M. Gannon, United States Department of Justice, Washington, DC, for respondents-appellees.

Before: HALL and T. G. NELSON, Circuit Judges; and WINMILL, District Judge.**

CYNTHIA HOLCOMB HALL, Circuit Judge.

Federal prisoner Ned Delancy appeals the district court's denial of his petition for writ of habeas corpus. Delancy is serving a 48 to 60 month term for violating the conditions of his special parole. He contends that the Bureau of Prisons and the Parole Commission wrongfully denied him a reduction in his sentence for completing a 500–hour residential drug and alcohol program under 18 U.S.C. § 3621(e)(2)(B) ("the incentive provision"). The principal issue raised in Delancy's appeal is whether the incentive provision applies to prisoners sentenced before the

nation.

** Hon. B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by desig-

Sentencing Reform Act of 1984 came into effect.

We have jurisdiction of Delancy's timely appeal under 28 U.S.C. §§ 1291 and 2253; and we affirm.

## I. Background

### A. Delancy's Criminal History

Ned Delancy was convicted in 1985 of possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a). He was sentenced to 15 years imprisonment and a lifetime term of special parole. Delancy was paroled in 1990. The Parole Commission ("the Commission") revoked his parole on January 4, 1994, after determining that he had committed two cocaine distribution offenses, left the district without permission, associated with known criminals, committed grand theft by forgery, and made threatening telephone calls. Delancy is currently serving a term of 48 to 60 months.

### B. Delancy's Application for Sentence Reduction

On May 11, 1995, Delancy chose to enter the Bureau of Prisons' ("Bureau") 500-hour Residential Drug Abuse Program. Upon completing the program and receiving a certificate of completion on June 4, 1996, Delancy applied for a sentence reduction under the incentive provision, 18 U.S.C. § 3621(e)(2)(B). That provision, enacted in the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796, provides:

> (2) Incentive for prisoners' successful completion of [residential substance abuse] treatment program.
>
> ....

(B) Period of custody.—The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (supp.1997).

While Delancy was in the program, the Bureau had determined that, pursuant to its regulations, it would not authorize a reduction in his sentence under Section 3621's incentive provision because he was a parole-eligible prisoner. 28 C.F.R. § 550.58 provides in relevant part:

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months ... unless the inmate is ... eligible for parole....

28 C.F.R. § 550.58 (1995).[1] Once the Bureau determined that Delancy had completed the drug treatment program, it referred his request for a sentence reduction to the Parole Commission.[2]

The Commission considered Delancy's request under 28 C.F.R. § 2.60, which had been recently amended in response to Section 3621's incentive provision. The amended Section 2.60 provides that the Commission will promptly review a report of successful completion of a substance abuse program for possible presumptive parole date advancement under its preexisting "superior program achievement" advancement scheme. 28 C.F.R. § 2.60 (1997); see also 61 Fed.Reg. 4350 (Feb. 6, 1996). Under that scheme, Delancy could have received at most a seven-month advancement. See 28 C.F.R. § 2.60(e). The Commission declined to give

---

1. The language in Section 550.58 excluding parole-eligible inmates was amended effective May 17, 1996, when the Bureau made other unrelated changes. It now requires the inmate to have been "sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D." 28 C.F.R. § 550.58 (1997). This language, which more clearly indicates that the exclusion applied to all inmates sentenced before the Sentencing Guidelines were enacted, is not a substantive change for purposes of this appeal.

2. In its request for comments on Section 550.58, the Bureau explained:

> An inmate eligible for parole is not eligible for consideration for early release by the Bureau; information concerning the successful completion of a residential drug treatment program by a parole-eligible inmate will be transferred to the Parole Commission.

60 Fed.Reg. 27692 (May 25, 1995).

Delancy any advancement, however, relying on its doubts that Delancy had a significant history of drug abuse, as well as its concern that Delancy was at significant risk of future criminal activity due to his expressed desire for a luxurious lifestyle.

The Commission's regulation had not always been so narrow. Several days after Delancy entered the treatment program, the Commission issued a statement that it proposed to take into account the incentive provision in Section 3621 by amending its superior program achievement rules. Under that scheme, a prisoner could be considered for a special advancement of his presumptive parole date of up to twelve months, *in addition* to any other advancements granted under the superior program achievement scheme. *See* 60 Fed.Reg. 26010 (May 16, 1995).[3] It then formally issued the interim rule on August 5, 1995, setting its effective date as October 2, 1995. *See* 60 Fed.Reg. 40094–02 (Aug. 7, 1995). Ultimately, the Commission rejected this interim rule in favor of the more restrictive rule, which became effective on March 7, 1996.

### C. The District Court's Ruling on Delancy's Habeas Petition

Delancy filed a federal habeas petition seeking review of the Bureau's and the Commission's decisions. The district court denied his petition. *Delancy v. Crabtree*, 955 F.Supp. 1226 (D.Or.1997). It ruled that the Bureau properly deferred the decision of Delancy's eligibility for a reduction to the Commission. When Congress amended 18 U.S.C. § 3621, the court explained, it did not intend to authorize the Bureau to make early release determinations for pre-guidelines prisoners as well as prisoners sentenced under the guidelines. Instead, the decision whether to reduce the sentence of a pre-guidelines prisoner remained with the Commission as part of its discretionary authority to grant or deny parole under 18 U.S.C. § 4203(b). *Id.* at 1228.

In support of its decision, the court noted that it found no authority to indicate that Congress intended the incentive provision in Section 3621 to override the Parole Commission's authority to make parole decisions for pre-guidelines prisoners under the Parole Commission Reorganization Act. *Id.* It also reasoned that the two groups of prisoners logically ought to be treated differently. Guidelines prisoners need the incentive provided in the drug treatment statute since they are ineligible for early release on parole; pre-guidelines prisoners are already eligible for early release on parole or early release pursuant to "good time" credits. Moreover, the court observed, pre-guidelines prisoners still could obtain an advanced release date for participating in a drug treatment program under the Commission's existing superior program achievement advancement scheme. *Id.* at 1229.

Finally, the court ruled that the Commission did not violate retroactivity doctrine by applying its final rule addressing the incentive provision in Section 3621 rather than its interim rule, since the Commission does not determine a prisoner's eligibility for a sentence reduction until he completes the drug treatment program. *Id.*

This appeal followed.

## II. Standard of Review

The district court's denial of Delancy's habeas petition is reviewed de novo. *Downey v. Crabtree*, 100 F.3d 662, 663–64 (9th Cir. 1996).

## III. Pre-Guidelines Inmates' Eligibility For the Incentive Provision, 18 U.S.C. § 3621(e)

Delancy argues that in 28 C.F.R. § 550.58, the Bureau of Prisons misconstrued Section 3621's incentive provision to give it the authority to reduce only the sentences of prisoners sentenced under the guidelines, not the

---

3. The Commission explained:
   Although the existing regulation already sets forth a schedule of permissible advancements for superior program achievement, the Commission proposes to add the above-described provision in order to equalize the incentive

available to parole-eligible prisoners with the new incentive for completion of substance abuse treatment programs that will be available for federal prisoners serving no-parole sentences, under 18 U.S.C. § 3621(e)(2).
60 Fed.Reg. 26010–11 (May 16, 1995).

sentences of pre-guidelines prisoners. Because the statute plainly applies only to post-guidelines prisoners, we reject Delancy's argument.

### A. Standard of Review

■ We review the Bureau's interpretation of 18 U.S.C. § 3621 de novo. *See Alaska Wildlife Alliance v. Jensen,* 108 F.3d 1065, 1069 (9th Cir.1997). The express language of the statute or other indicia of clear congressional intent control. *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)); *see also Downey v. Crabtree,* 100 F.3d 662, 666 (9th Cir.1996) (quoting *National R.R. Passenger Corp. v. Boston and Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401–02, 118 L.Ed.2d 52 (1992)).

■ However, if the statute is silent or ambiguous as to a particular issue, we defer to the Bureau's interpretation of the statute in 28 C.F.R. § 550.58. Review is limited to whether the Bureau's interpretation constitutes a permissible construction of the statute. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82; *Conlan v. United States Dept. of Labor,* 76 F.3d 271, 274 (9th Cir.), *cert. denied,* ─── U.S. ───, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996). Because Section 550.58 was promulgated subject to the rigors of the Administrative Procedure Act, it is owed full *Chevron* deference. *Jacks v. Crabtree,* 114 F.3d 983, 984–85 & n. 1 (9th Cir.1997).

### B. The Plain Meaning of 18 U.S.C. § 3621

■ We " 'determine the plain meaning of a statute by looking to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *Conlan,* 76 F.3d at 274 (quoting *Seldovia Native Ass'n, Inc. v. Lujan,* 904 F.2d 1335, 1341 (9th Cir.1990)) (internal quote omitted).

■ Section 3621's "Effective Date" note is dispositive. It explicitly limits the entire statute to post-guidelines prisoners by referring to the "Effective Date" note applicable to the entire Sentencing Reform Act of 1984, Pub.L. 98–473, Tit. II, ch. II, 98 Stat. 1987, of which Section 3621 was one provision. *See* 18 U.S.C. § 3621 (note on Effective Date) (citing 18 U.S.C. § 3551 (notes on Effective Date)). The Sentencing Reform Act substantially amended the general sentencing provisions of the United States Code, established the United States Sentencing Commission, and replaced the parole system with a new system of supervised release.

However, the Act—including Section 3621—does not apply to prisoners whose illegal conduct occurred before the Act's effective date of November 1, 1987. *See* 18 U.S.C. § 3551 (notes on Effective Date). Even though Delancy's parole violation occurred after November 1, 1987, the Sentencing Reform Act does not apply to him since he committed his primary offense—possession with intent to distribute—before the Act's effective date. *See United States v. Silver,* 83 F.3d 289, 291 (9th Cir.1996); *cf. United States v. Rewald,* 835 F.2d 215, 216 (9th Cir.1987).

This reading of Section 3621's Effective Date note is confirmed by Section 3621(a), which by its terms applies only to post-guidelines prisoners. Section 3621(a) gives the Bureau custody over individuals "sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227[.]" 18 U.S.C. § 3621(a). Subchapter D of chapter 227 refers to the sentencing guidelines scheme. Pre-guidelines prisoners like Delancy remain subject to the old statutory provisions related to parole. *See* Parole Commission Phaseout Act of 1996, Pub.L. No. 104–232, §§ 1–3, 110 Stat. 3055, 3056 (extending Commission's oversight of pre-guidelines prisoners until November 1, 2002). Thus, Delancy is under the custody of the Bureau not through Section 3621(a), but through former 18 U.S.C. § 4082(a),[4] a prospectively-repealed old-law provision which continues to apply to offenses committed before November 1, 1987. *See* 18 U.S.C. § 3551 (notes on Effective Date); *see also Kingsley v. United States,* 968 F.2d 109, 114 n. 4 (1st Cir.1992).

---

4. That provision gives the Department of Justice custody over prisoners. The Department of Justice delegated its authority to the Bureau of Prisons. *See* 28 C.F.R. § 0.96(c).

Attempting to fit the incentive provision into the parole regime further demonstrates that the provision was not meant to apply to pre-guidelines prisoners. The incentive provision gives the Bureau the discretion to "reduce" the period an eligible prisoner "remains in custody," although "such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). If applied to pre-guidelines prisoners, it could be interpreted to subtract up to a year from the time actually spent in custody, which would mean that prisoners with a presumptive parole date would be released ahead of that date. Alternatively, the incentive provision could be construed to simply move up the presumptive parole date, at which time the Commission would exercise its usual discretion in deciding whether to grant parole. Under yet a third interpretation, the provision could act to reduce the maximum term a pre-guidelines prisoner must serve if parole is not granted, much like good-time credits. See 18 U.S.C. § 4163, 4164.

The incentive provision is susceptible to so many interpretations because it uses interchangeably the concepts of the time a prisoner spends in custody and the term that a prisoner must serve. While those concepts are indistinguishable in the context of guidelines sentences, which are determinate, they are quite different in the pre-guidelines sentencing context, where the possibility of parole makes sentences less fixed. The incentive provision's ambiguity when applied to parole-eligible sentences is another indication that it was not intended to reduce the sentences of parole-eligible prisoners.

Under an expanded "plain meaning" reading of the statute, neither Section 3621 as a whole, nor Section 3621(e)(2)(B) in particular, applies to Delancy. Since the statute is unambiguous, we need not consider whether the Bureau's interpretation constitutes a permissible construction of the statute under *Chevron.*

## IV. Retroactivity and the Parole Commission's Application of its Final Rule

■ We must determine whether the Commission violated retroactivity doctrine when it applied its final superior program achievement rule to Delancy rather than its more expansive interim rule. A law is impermissibly retroactive when it "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499–1500, 128 L.Ed.2d 229 (1994). For example, a law would have such an effect if it impaired rights that a party possessed when he or she acted, increased a party's liability for previous conduct, or imposed new duties with regard to completed transactions. *Id.* at 280, 114 S.Ct. at 1505.

### A. District Court's Reasoning Was in Error

The district court held that the Commission's final rule was not applied retroactively to Delancy because he had not yet finished the drug treatment program when the final rule was applied to him. *Delancy,* 955 F.Supp. at 1229. The district court's rationale was rejected in *Cort v. Crabtree,* 113 F.3d 1081, 1086 (9th Cir.1997). There, we ruled that the Bureau could not retroactively apply more restrictive incentive program regulations, even though the prisoners had not yet finished the treatment program when the Bureau attempted to apply the more restrictive regulations. We reasoned that although the Bureau's action might not violate the *Ex Post Facto* Clause, it did wrongfully disrupt the prisoners' "settled expectations" while they were in the program that they would receive a sentence reduction. *Id.* (citing *Landgraf,* 511 U.S. at 265, 114 S.Ct. at 1496–97).

Nonetheless, the district court's ruling may be affirmed on alternative grounds. *See Myers v. U.S. Parole Comm'n,* 813 F.2d 957, 959 (9th Cir.1987).

### B. "Settled Expectations"

■ In order to determine whether Delancy's "settled expectations" were disrupted, a closer review of the events that took place is warranted. On May 11, 1995, Delancy elected to enter the Bureau's 500–hour treatment program. On May 16, 1995, the Commission announced that it planned to issue a rule on

advancing the presumptive parole dates of prisoners who had completed the program. It published its interim rule on August 7, 1995, and the rule took effect on October 2, 1995. In the meantime, the Bureau announced and promulgated Section 550.58, which stated that inmates eligible for parole were not eligible for consideration under the incentive provision. 28 C.F.R. § 550.58 (June 26, 1995); 60 Fed.Reg. 27692 (May 25, 1995) (announcing regulation).

On September 25, 1995, the Bureau informed Delancy that he was eligible for consideration under the Commission's superior program achievement regime. The Bureau also wrote to the Commission on November 21, 1995 and June 20, 1996, requesting that the Commission determine Delancy's eligibility under its superior program achievement rule. In February of 1996, the Commission issued its more restrictive rule, effective March 7, 1996. Delancy successfully completed the residential drug treatment program on June 20, 1996. On July 16, 1996, the Commission considered and denied Delancy's request.

Delancy could not have relied on the interim regulation when he entered the drug treatment program, since it had not yet been announced. The Bureau's Section 550.58 had not yet been announced either. All the information Delancy had at that time was the statute itself. Delancy argues that he properly assumed he was eligible for a reduction since the statute unambiguously applied to him, but in reality the statute plainly did not apply to pre-guidelines prisoners like Delancy.

Although Delancy had no basis to believe he would receive a sentence reduction when he entered the program, the Commission's subsequent announcement and promulgation of its interim rule, and the Bureau's notice to Delancy that he was eligible for a reduction under the Commission's interim regulation, may have given him some degree of a "settled expectation" that he would receive its benefits. See Cort, 113 F.3d at 1082 (prohibiting retroactive application of amended regulation to prisoners who entered drug treatment program before any of Bureau's regulations enacted); but see Ver-

mouth v. Corrothers, 827 F.2d 599, 602 (9th Cir.1987) (since Commission has authority to create or amend guidelines, "prisoner has no basis to expect parole guidelines to remain constant").

We need not decide whether Delancy had a sufficiently strong "settled expectation" that the interim rule would apply to him, because Delancy cannot show that the Commission's application of the final rule actually impaired any rights he possessed when he remained in the drug treatment program under the interim rule. The interim rule made it clear that the Commission retained the discretion to deny an advancement in the presumptive parole date if an advancement would be inconsistent with the statutory and regulatory criteria for setting parole dates. See 60 Fed. Reg. 26011, proposed 28 C.F.R. § 2.60(g) (no advancement if unusual circumstances compel a finding that early parole would be inconsistent with Section 4206); 60 Fed.Reg. 40094 (expressing need to implement interim rule consistently with statutory criteria for parole at 18 U.S.C. § 4206); 60 Fed.Reg. 40095, proposed 28 C.F.R. § 2.60(g) (Commission "will consider" whether advancement "may" be made). In addition, before it was amended, we construed Section 2.60's permissive language to allow the Commission to consider the usual factors it weighed in making parole decisions. See Kele v. Carlson, 877 F.2d 775, 776 (9th Cir.1989).

The only substantive difference between the interim and final rules is that a prisoner deemed eligible for an advancement in his presumptive parole date potentially receives a larger advancement under the interim rules. Compare 60 Fed.Reg. 40095, proposed 28 C.F.R. § 2.60(g) (prisoners receive advancement of up to twelve months in addition to other advancements) with 28 C.F.R. § 2.60(b) (prisoners receive advancement as part of calculation of total advancements).

As described below, the Commission rejected Delancy's request for parole in conformity with the statutory criteria and regulations for determining parole. If it had decided that Delancy was eligible for a presumptive parole date advancement, he might have a claim that the application of the final rule caused him to receive a smaller advance-

ment than he would have received under the interim rule. *Cf. Cort,* 113 F.3d at 1085 (court must focus on defendant's *eligibility* to receive a lesser sentence, not whether defendant actually will receive a lesser sentence). But the decision the Commission made here would have been the same whether the interim or the final rule applied.

### C. Agency-Rule Retroactivity Doctrine

■ Delancy argues that retroactive application of the Commission's final rule is prohibited under the balancing analysis applied when determining whether an agency may retroactively apply its construction of a law. *See Cort,* 113 F.3d at 1084 & n. 2. We balance five factors:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Seldovia Native Ass'n, Inc.,* 904 F.2d at 1348.

The government acknowledges that this is a case of first impression, which weighs against finding retroactivity since Delancy could not have anticipated that the final rule would apply to him rather than the interim rule. But the remaining factors support the application of the final rule. While the final rule is substantially different from the interim rules in the amount of advancement a prisoner can receive, both the interim and the final rules allowed the Commission to consider the usual factors in making parole decisions. As it applied to Delancy, therefore, the final rule is not an abrupt departure from the interim rule.

In addition, Delancy cannot have materially relied on the interim regulations to his detriment, since both the interim and the final regulations provide that the Commission exercise its discretion to consider the appropriateness of parole. Again, if Delancy had received a reduction, he might have a claim if the reduction were lower under the final rule than it could have been under the interim rule. Application of the final rule also did not impose any burden on Delancy since the outcome—no reduction—would have been the same under the interim rule.

Finally, the Commission articulated a strong interest, based on its statutory authorization to grant or deny parole on a principled basis, in applying the final rule. It explained that it considered eliminating the possibility that a prisoner could receive an additional advancement for completing a treatment program, because the population of prisoners who had not yet received advancements were mostly ineligible under the statutory criteria for parole. "The Commission wishes to avoid the situation in which its regulations appear to promise release date advancements which, in practice, are rarely granted." 61 Fed.Reg. 4350. Instead, the Commission compromised by including the amount of advancement a prisoner could receive for completing a treatment program in the preexisting regime, and by providing that it would consider promptly any prisoner's request for an advancement on that basis. *Id.*

The Commission's application of its final rule did not violate retroactivity doctrine.

## V. Parole Commission Decision

■ Delancy challenges the Commission's denial of Delancy's application for an advancement in his presumptive parole date, contending that the Commission exceeded the scope of its discretion. We lack the authority to review the Commission's discretionary decisions to grant or deny parole. *Wallace v. Christensen,* 802 F.2d 1539, 1551 (9th Cir.1986). However, we may review claims that "the Commission acted beyond the scope of discretion granted by Congress." *Id.*

In its decision, the Commission explained that it denied Delancy's application because: 1) no history of drug abuse was indicated in Delancy's original presentence report, in the offense reports resulting from his parole violation, or in his drug tests, and Delancy denied a history of drug abuse at the time of

his original offense; 2) the treatment summary from the 500–hour drug program Delancy attended stated that his attendance was excellent but his participation superficial; 3) Delancy's treatment specialist indicated that Delancy was "enchanted" with a luxurious lifestyle and he consistently expressed a desire to resume a "get rich quick" lifestyle upon release; and 4) Delancy's treatment specialist stated that he considered Delancy to be at significant risk for future criminal activity due to his desire for quick and easy financial gain. The Commission concluded that Delancy's involvement in drug distribution was primarily for financial gain, not because he was a substance abuser.

The Commission acted within the scope of its discretion. We have determined that superior program achievement credit may be denied if the Commission believes that the prisoner's claim to the credit is outweighed by the traditional factors it considers in determining parole eligibility. *Kele,* 877 F.2d at 776. The Commission is authorized to consider the seriousness of the prisoner's offense and the likelihood that the prisoner will engage in criminal behavior in the future. *See* 18 U.S.C. § 4206(a); 28 C.F.R. 2.20. It is entitled to consider a wide range of information sources, including reports and recommendations of the prison staff; official reports of the prisoner's criminal record; presentence investigation reports; and physical, mental, or psychiatric reports. 18 U.S.C. § 4207.

Since the Commission's decision "involve[d] the exercise of judgment among a range of possible choices," *id.* at 1552, the Commission made a discretionary decision that is not subject to judicial review.

## VI. Conclusion

The Bureau properly declined to consider Delancy's eligibility for the incentive provision since 18 U.S.C. § 3621 plainly does not apply to pre-guidelines prisoners. In addition, the Commission did not violate retroactivity doctrine when it applied the final version of 28 C.F.R. § 2.60 because Delancy's

application for an advancement of his parole date would have been denied under either the interim or the final rule. Finally, the Commission's decision not to advance Delancy's parole date under 28 C.F.R. § 2.60 is unreviewable.

For these reasons, we AFFIRM.