Simon CORT, Petitioner–Appellant,

v.

Joseph CRABTREE, Warden, Federal Correctional Institute, Sheridan, Oregon, Respondent–Appellee.

Don J. MARTIN, Petitioner–Appellant,

v.

Joseph CRABTREE, Warden, Federal Correctional Institute, Sheridan, Oregon, Respondent–Appellee.

Barry SULLENGER, Petitioner–Appellant,

v.

Joseph CRABTREE, Warden, Federal Correctional Institute, Sheridan, Oregon, Respondent–Appellee.

Nos. 96–36226, 96–36228, 96–36231.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1997.

Decided May 19, 1997.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for petitioners-appellants.

Thomas M. Gannon, United States Department of Justice, Washington, D.C., for respondent-appellee.

Before: WRIGHT, REINHARDT, and THOMAS, Circuit Judges.

REINHARDT, Circuit Judge.

Appellants Simon Cort, Don Martin, and Barry Sullenger are federal prisoners

serving sentences for unarmed bank robbery in violation of 18 U.S.C. § 2113(a). The Bureau of Prisons initially determined that they were statutorily eligible for a sentence reduction under 18 U.S.C. § 3621(e)(2)(B), which authorizes it to grant a sentence reduction of up to one year to prisoners convicted of "nonviolent offenses" who complete a substance abuse treatment program. Before appellants had completed the treatment program, the Bureau altered its interpretation of "nonviolent offenses" for purposes of § 3621(e)(2)(B) and, relying upon its new interpretation, informed appellants that they were no longer eligible for a sentence reduction on the ground that they had been convicted of a crime of violence. We hold that the Bureau erred in applying its new interpretation of § 3621(e)(2)(B) retroactively, and that appellants are therefore eligible for discretionary sentence reduction.

## BACKGROUND

In 1990, Congress enacted amendments to 18 U.S.C. § 3621 requiring the Bureau of Prisons to give every federal prisoner with a substance abuse problem the opportunity to participate in a treatment program while in custody. 18 U.S.C. § 3621(b),(e). In order to encourage prisoners to seek treatment, § 3621(e)(2)(B) gives the Bureau authority to reduce, by up to one year, the sentence of prisoners "convicted of a nonviolent offense" who successfully complete a treatment program:

> (B) *Period of custody.*—The period a prisoner *convicted of a nonviolent offense* remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added). Pursuant to these provisions, the Bureau of-

fers a 500–hour comprehensive substance abuse treatment program.

*Appellants Cort, Sullenger, and Martin are* each serving federal sentences for unarmed bank robbery in violation of 18 U.S.C. § 2113(a). Cort's release date, adjusted for good conduct but without any sentence reduction, is currently set for June 4, 1998. Sullenger's release date, similarly adjusted, is currently set for October 2, 1997, and Martin is scheduled to be released on June 22, 1997. Each appellant voluntarily entered the Bureau's comprehensive 500–hour program: Cort enrolled on March 30, 1995, Sullenger on March 20, 1995, and Martin on May 11, 1995. They claim, and the government does not dispute, that they entered the program in the belief that the offense of which they were convicted did not render them ineligible for a sentence reduction.

On May 25, 1995, the Bureau published a regulation that established certain eligibility criteria for a sentence reduction under § 3621(e). *See* 28 C.F.R. § 550.58 (1995). Both in its initial form and as amended in 1996, the regulation provided, *inter alia,* that inmates "whose current offense is determined to be a crime of violence as defined in 18 U.S.C. 924(c)(3)" [1] are ineligible, but it did not address specifically the eligibility of inmates serving sentences for bank robbery, armed or otherwise.

On July 11, 1995, the Bureau notified Cort and Sullenger that they were each eligible for sentence reduction under 18 U.S.C. § 3621(e). Each of these determinations, entitled a "Notification of Inmate Eligibility for 18 U.S.C. § 3621 E Release Date," was initialed by a case manager and a Drug Abuse Program staff member, and signed by the Drug Abuse Program Coordinator. The determination informed the recipient that "this decision may be appealed through the Administrative Remedy Process."

---

1. 18 U.S.C. § 924(c)(3) reads:
   (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
      (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

      (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
   18 U.S.C. § 924(c)(3).

On July 24, 1995—shortly after it had found Cort and Sullenger eligible, but before it had ruled on Martin's eligibility—the Bureau issued Program Statement 5162.02 in order to "implement" provisions such as § 3621(e) that make reference to "nonviolent offense" and "crime of violence." This directive defined violations of 18 U.S.C. § 2113(a)—namely, bank robbery—as a type of offense that "may or may not have involved the use, attempted use, or threat of force, or presented the substantial risk that force might be used." It instructed Bureau officials to determine whether a particular offense was "non-violent" by looking to the "Specific Offense Characteristics" section of the prisoner's pre-sentence report.

On October 3, 1995, the Bureau notified Martin that he was ineligible for a sentence reduction on the apparent basis of an unsubstantiated allegation in his pre-sentence report that he had threatened to use a gun during one of his offenses. Martin sought and received from the district judge who had sentenced him an order explaining that there was "no evidence to support a finding that [Martin] threatened the use of a gun during any of the robberies at issue." In response to this clarification, the Bureau notified Martin on January 18, 1996 that he was indeed eligible for a sentence reduction under § 3621(e).

On April 23, 1996, the Bureau issued Change Notice CN–01, the stated purpose of which was to "clarify" the definition of "crimes of violence" used in Program Statement 5162.02. The Change Notice explicitly reversed the Program Statement with respect to the eligibility of bank robbers, armed or otherwise:

> With regard to the specific crime of bank robbery, the offense should be considered a crime of violence pursuant to [18 U.S.C.] section 924(c)(3) since, due to the circumstances surrounding bank robberies, the offense involves an explicit or implicit threat of force and thus has as an element the "threatened use of physical force against the person or property of another."

Approximately two weeks later, each appellant received notice of a "Change in Drug Abuse Treatment Program Status." Cort and Sullenger received notices that read in relevant part:

> Change Notice CN–01 to PS 5162.02 Definition of Term "Crimes of Violence" has defined your current offense as a crime of violence. Thus, you are presently viewed as ineligible for early release under 18 U.S.C. 3621(e). Your signature indicates that this issue has been discussed with you.

Martin's notice contained a similar explanation:

> As per Change Notice (CN–01) to PS 5162.02, Mr. Martin's instant offense of bank robbery is now considered violent. Thus, he is ineligible for early release under 18 U.S.C. 3621E.

Appellants refused to sign their respective notices, completed the 500–hour treatment program, and sought habeas corpus relief in district court under 28 U.S.C. § 2241. They argued, *inter alia*, that the doctrines of promissory and equitable estoppel precluded the Bureau from revoking their eligibility for sentence reduction under § 3621(e); that they had been convicted of "nonviolent offenses" within the meaning of § 3621(e) and were therefore eligible for sentence reduction; that the Bureau lacked statutory authority to reclassify their offenses retroactively by way of the Change Notice; and that by its own terms, the Change Notice should not have been applied retroactively. The district court rejected all of these contentions. *Martin v. Crabtree*, 945 F.Supp. 215, 217–20 (D.Or.1996). On appeal, appellants challenge the district court's rulings on their estoppel and retroactivity arguments. Because all three appellants are scheduled for release within a year, a one-year sentence reduction would result in their immediate release.

### DISCUSSION

Appellants raise three retroactivity challenges to the Bureau's actions in this case. First, relying upon the Supreme Court's decision in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), they argue that the Bureau lacked the authority to apply the Change Notice to them retroactively because

it lacks express statutory authority to promulgate retroactive regulations. Second, relying again upon *Bowen*, they argue that as a matter of statutory or regulatory construction, the Change Notice cannot be construed as applying retroactively. Finally, they contend that retroactive application of CN–01 to them is prohibited under the balancing analysis that we apply when determining whether retroactive application of an administrative construction of law is permissible.[2] Because we agree with appellants that under *Bowen* the Change Notice cannot be construed as applying retroactively, we need not consider their other arguments, including estoppel.

In *Bowen*, various hospitals challenged the efforts of the Department of Health and Human Services to recoup Medicare payments pursuant to a rule that had previously been struck down for failure to comply with proper rulemaking procedures, but that had since been properly readopted by the agency. *Bowen*, 488 U.S. at 206–07, 109 S.Ct. at 470–71. Elaborating upon the time-honored principle that "[r]etroactivity is not favored in the law," *id.* at 208, 109 S.Ct. at 471, the Court set forth three principles for determining whether an agency may apply a given rule retroactively. First, it observed that courts must determine as a threshold matter whether retroactive rulemaking exceeds the agency's statutory grant of rulemaking authority. *Id.* Second, it set forth a rule of statutory construction, applicable to both congressional enactments and agency rules, that strongly disfavors retroactivity: "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* Finally, combining the first two principles, it explained that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* In light of these principles, the Court deemed "the threshold ques-

tion" in *Bowen* "whether the Medicare Act authorizes retroactive rulemaking"—a question that it answered in the negative. *Id.*

Since *Bowen*, the Court has reemphasized the importance of the presumption against retroactivity. It has reiterated that the presumption is "deeply rooted in our jurisprudence" and "embodies a legal doctrine centuries older than our Republic": "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994); *see also Lynce v. Mathis*, —— U.S. ——, ——, 117 S.Ct. 891, 895, 137 L.Ed.2d 63 (1997) (quoting *Landgraf*). Thus, even where the Ex Post Facto Clause is not formally applicable, "prospectivity remains the appropriate default rule." *Landgraf*, 511 U.S. at 272, 114 S.Ct. at 1501.

In this case, the government has sensibly not even attempted to argue that the language of Change Notice CN–01 requires retroactive application. The Notice states merely that its purpose is "[t]o clarify the Bureau of Prisons' definition of 'crimes of violence' as that term is used in various program statements," and that it includes a new section "to provide specific instructions regarding 'Bank Robbery and Incidental Crimes.'" The new section, in turn, says nothing about its application to cases in which the Bureau has already rendered an eligibility decision consistent with its original interpretation and subject only to program completion. Indeed, there is no indication anywhere in the Change Notice that the Bureau intended that any part of it would apply retroactively or serve to undo prior eligibility determinations.

■ The district court deemed appellants' retroactivity arguments "irrelevant" on the ground that "[t]he determination regarding a

---

**2.** We have adopted a five-part analysis, borrowed from the D.C. Circuit, for balancing an agency's interest in retroactive application of a rule or interpretation against the regulated party's interest in relying on the former rule or interpretation. *See Seldovia Native Ass'n, Inc. v. Lujan*,

904 F.2d 1335, 1347–48 (9th Cir.1990); *Oil, Chemical & Atomic Workers v. NLRB*, 842 F.2d 1141, 1145 (9th Cir.1988); *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir.1982) (citing *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 390–93 (D.C.Cir.1972)).

prisoner's eligibility for the sentence reduction is made at the time the prisoner completes the program," and that no such determination can be made before a prisoner has completed the program. *Martin,* 945 F.Supp. at 219. We disagree. It is clear that the Bureau could and did determine prospectively that appellants and others already in the program were eligible for sentence reduction subject only to their successful completion of the 500–hour program. The eligibility decisions received by appellants do not purport to attach any conditions subsequent to eligibility other than the successful completion of the program. To the contrary, the Bureau's intent to render actual decisions that were binding subject only to program completion, as opposed to mere recommendations, is evidenced by the fact that the Bureau itself referred to them as "decisions," and by the fact that prisoners had the right to appeal these "decisions." By the terms of these "decisions," all that each appellant had to do thereafter in order to receive consideration for a discretionary sentence reduction was to satisfy a single condition that was within his control—completion of the 500–hour program.

There is nothing in § 3621(e) to suggest that the Bureau of Prisons did not have the authority to render eligibility decisions subject to the lone condition of program completion. Indeed, an interpretation of § 3621(e) that deprived the Bureau of the ability to render such prospective eligibility decisions would hinder the very purpose of the statute. The express purpose of § 3621(e) is to provide prisoners with an "incentive" to enter and complete a substance abuse treatment program, and it does so in the case of nonviolent offenders by offering them a sentence reduction of up to one year, at the discretion of the Bureau of Prisons. While some prisoners may be willing to enroll, and even to complete treatment, simply on the basis of a reasonable expectation that they will be found eligible, or even simply because they desire to cure themselves of drug addiction, prisoners who know prior to enrollment that they are eligible to receive a shorter sentence are likelier to enroll, and those who are found during the course of the program to be eligible for early release are likelier to complete the program. Thus, the Bureau's ability to render final eligibility decisions that are subject only to completion of the drug treatment program enables it to make more effective use of the program.

As additional support for its decision, the district court relied on the fact that even when a statutorily eligible prisoner successfully completes the treatment program, the Bureau retains discretion under the statute to grant or deny a sentence reduction. *Martin,* 945 F.Supp. at 219. The fact that the Bureau has such discretion, however, is irrelevant to whether the Bureau determined that the appellants were *eligible* for such discretionary sentence reduction, and whether it may now change its mind as to that distinct question. Whether the Bureau has discretion to deny them a reduction is undisputed; the question here is whether the Bureau is required to consider their requests for early release. A prisoner's right to *consideration* for early release is a valuable one that we have not hesitated to protect. *See, e.g., United States v. Paskow,* 11 F.3d 873, 877 (9th Cir.1993) ("[A] court must focus on the change in the defendant's *eligibility* to receive a lesser sentence than a new law may permit, regardless of whether the defendant would actually have received the lesser sentence.") (citing *Lindsey v. Washington,* 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937)); *Flemming v. Oregon Bd. of Parole,* 998 F.2d 721, 724–25 (9th Cir.1993) ("[A] criminal defendant need not show that she or he certainly would have received a less onerous punishment under a prior law to establish a constitutional violation.") (citing *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)).

The government's main argument on appeal is confusing, and defies easy description. The government contends initially that unarmed bank robbery is necessarily a crime of violence under the law of this circuit, and that appellants have therefore *always* been ineligible for such a reduction. In accordance with this theory, it asserts that because the Bureau's initial interpretation of "nonviolent offenses" as including certain instances of unarmed bank robbery constituted an error of law, the Bureau may now disre-

gard the eligibility determinations that it rendered pursuant to that interpretation, and may view the subsequent revocation of appellants' eligibility determinations on the basis of its new interpretation as the mere correction of a mistake. However, the government does not argue—indeed, it *expressly declines* to argue—that the Bureau exceeded its authority or acted unlawfully in adopting its initial Program Statement, or in determining that appellants were conditionally eligible for sentence reduction. It is difficult, if not impossible, to reconcile the government's position that adoption of the Program Statement was lawful and proper with its insistence that the Program Statement may nevertheless be disregarded as a mere error of law. The government asks us, in effect, to hold that the Bureau made a lawful mistake of law, and thus to set aside a lawful agency action as unlawful. Without ruling definitively on whether the unique proposition advanced by the government could ever be sustained, we are unwilling to apply so novel a principle of law in the circumstances of this case.[3]

The government also argues that because appellants had not yet completed the 500-hour treatment program when the Bureau applied the Change Notice to them, its actions cannot be described as retroactive. In support of this argument, it relies on cases involving the applicability of the Ex Post

Facto Clause. *See Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987); *Nulph v. Faatz,* 27 F.3d 451, 455 (9th Cir.1994). Whatever rule applies in that context, however, is irrelevant because appellants do not challenge application of the Change Notice on ex post facto grounds. In concluding that the Change Notice may not be construed as applying to appellants, we rely simply on the fact that the Bureau applied the Change Notice to prisoners who had already undergone numerous hours of treatment and whose eligibility it had already determined. Before an agency may disrupt "settled expectations" in such a manner, *Landgraf,* 511 U.S. at 265, 114 S.Ct. at 1497, the language of the relevant regulation must compel such a result. *Bowen,* 488 U.S. at 208, 109 S.Ct. at 471–72. It is indisputable that Change Notice CN–01 does not do so.

In view of the above, the Bureau's new definition of "nonviolent offenses" cannot be applied to prisoners already in the treatment program on the date of its adoption, much less to prisoners who have already been found eligible.

## CONCLUSION

We hold that Change Notice CN–01 applies only to prisoners who had neither entered the substance abuse treatment program nor received favorable eligibility

---

**3.** We agree with the government and with the district court that the Bureau's *new* interpretation of § 3621(e)(2)(B) is consistent with the law of this circuit: while we have yet to resolve the specific question of whether unarmed bank robbery can be a "nonviolent offense" for purposes of 18 U.S.C. § 3621(e)(2)(B), we have held for purposes of various Federal Sentencing Guidelines that unarmed bank robbery in violation of 18 U.S.C. § 2113(a) cannot constitute a "nonviolent offense." *See, e.g., United States v. Sanchez,* 933 F.2d 742, 747 (9th Cir.1991) (holding unarmed bank robber ineligible for downward departure under § 5K2.13 for "non-violent" offenses); *United States v. Selfa,* 918 F.2d 749, 751 (9th Cir.1990) ("[P]ersons convicted of robbing a bank 'by force and *violence'* or 'intimidation' under 18 U.S.C. § 2113(a) have been convicted of a 'crime of violence' within the meaning of Guideline Section 4B1.1."); *United States v. Borrayo,* 898 F.2d 91, 94 (9th Cir.1989) (holding that unarmed bank robbery involving threatened use of physical force is a "crime of violence" for purposes of § 4B1.2 and therefore cannot be a "nonviolent offense" for purposes of § 5K2.13).

Appellants offer no reason why that term should be construed differently for purposes of sentence reduction under § 3621(e)(2)(B). We note, however, that the D.C. Circuit has arrived at precisely the opposite conclusion from ours: in its view, unarmed bank robbery *can* constitute a "nonviolent offense" for sentencing purposes. *United States v. Chatman,* 986 F.2d 1446, 1448–50 (D.C.Cir.1993) (holding that unarmed bank robbery can constitute a "nonviolent offense" for purposes of downward departure under Federal Sentencing Guideline § 5K2.13).

We have also held that the Bureau may no longer determine whether a particular offense was "nonviolent" for purposes of § 3621(e)(2)(B) by looking to the particular facts underlying the conviction, as it did in the case of appellants; rather, it may look only to the fact of conviction and the statutory definition of the offense. *Downey v. Crabtree,* 100 F.3d 662, 665 (9th Cir.1996). Thus, the Bureau may no longer distinguish between armed and unarmed bank robbery—as it did here—unless it can point to a statutory distinction between the two types of bank robbery.

determinations as of the date of its issuance. Accordingly, the Bureau of Prisons remains bound by its initial determination that appellants are statutorily eligible for sentence reduction under 18 U.S.C. § 3621(e)(2)(B), and it must now decide, within its discretion, whether to grant the reduction. The judgment of the district court is

REVERSED and REMANDED.