Roger DOWLING, Petitioner,

v.

Joseph CRABTREE, Warden,
Respondent.

Civil No. 98–1057–HA.

United States District Court,
D. Oregon.

March 1, 1999.

Stephen R. Sady, Federal Public Defender, Portland, OR, for petitioner.

Kenneth C. Bauman, U.S. Attorney's Office, Portland, OR, for respondent.

OPINION AND ORDER

HAGGERTY, District Judge.

## I. INTRODUCTION

The petitioner, Roger Dowling, is an inmate at the Federal Correctional Institution ("FCI") at Sheridan, Oregon. The respondent, Joseph H. Crabtree, is the Warden of FCI at Sheridan and is inmate petitioner's custodian and the proper respondent in this action. Fed.R.Civ.P. 81(a)(2); *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir.1992).

Dowling has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, contending that his statutory and due process rights are being violated by the Federal Bureau of Prisons's ("BOP's") revocation of his eligibility determination for a one-year sentence reduction pursuant to 18 U.S.C. § 3621(e)(2)(B). For the reasons set forth below, the court will grant the petition for writ of habeas corpus.

## II. BACKGROUND

Dowling is serving a term of imprisonment at FCI Sheridan upon a conviction for conspiracy to distribute a controlled substance in violation of 18 U.S.C. § 846. Pursuant to 18 U.S.C. § 3621(b), the BOP is required to make available an appropriate drug and alcohol ("DAP") treatment program for treatable prisoners. On September 14, 1994, Congress enacted the Violent Crime Control and Law Enforcement Act, which amended § 3621 to allow the BOP to grant federal inmates convicted of a nonviolent offense up to a one-year sentence reduction for the successful completion of such a program. 18 U.S.C. § 3621(e)(2)(B). The express purpose of the provision is to provide nonviolent offenders with an incentive to enter into and complete a substance-abuse program.

*Cort v. Crabtree,* 113 F.3d 1081, 1085 (9th Cir.1997).

The record indicates that on December 4, 1992, the BOP accepted petitioner into a residential drug and alcohol program at FCI Tucson, Arizona, which he successfully completed on July 20, 1993. He received a certificate acknowledging his graduation from the 500–hour program. (Petition, ex. A.) After he had completed the program, the BOP promulgated Program Statement 5330.10, which provided that inmates who completed drug and alcohol treatment before Section 3621(3) was enacted were eligible for the one-year sentence reduction, and on August 31, 1995, the BOP determined that petitioner had successfully completed the requirements and therefore was eligible for early release. (Petition, exs. B and C.) Then in October 1996, the BOP reversed its course and determined that the FCI Tucson program did not meet the residency requirements for early release, but it decided that petitioner need not re-enroll in the treatment portion of the program. The BOP informed petitioner that in order to receive an early release, he would have to be transferred to another institution with an accredited DAP program, live in the DAP unit, and participate in institutional aftercare. As a result, petitioner was transferred to FCI Sheridan and resided in its DAP aftercare unit. (Petition, ex. D.) Then in March 1998, the BOP determined that further participation in a residential unit was necessary for petitioner to receive the reduction, so petitioner was transferred to the DAP dormitory. (Petition at ¶ 4.7.)

After petitioner completed each of the continually changing requirements of the BOP, on July 27, 1998, the BOP finalized petitioner's supervised release plan, which required petitioner to report to a half-way house in Oakland, California on September 8, 1998, for pre-release custody. (Petition, ex. F.) The BOP, however, once again reversed its course on August 4, 1998, when it revoked petitioner's time reduction because the BOP's regional office decided he had not successfully completed the 500–

hour residential treatment program because his six-month residence with other treatment program members occurred while petitioner was in aftercare rather than during the main body of the treatment program. (Petition, ex. E; Answer at 6.) The BOP claims its policy requires "[a]ll residential drug abuse treatment program participants [to] reside together in the same unit." (Answer at 6.) The BOP found that in order to be eligible for early release, petitioner would have to redo the entire treatment in "an *authorized* Residential Drug Abuse Program." (Petition, ex. 6) (emphasis in original). Because petitioner did not "have sufficient time remaining on his sentence to enroll in the FCI Sheridan" program, the BOP revoked his eligibility for early release. (Petition, ex. 6.) In September 1998, the court ordered the BOP to transfer petitioner to the half-way house pending the outcome of this litigation.

## III. DISCUSSION

Petitioner challenges the BOP's revocation of his early release eligibility under 18 U.S.C. § 3621. Because the BOP initially determined him to be provisionally eligible for early release, retroactive application of its changing view of the program's residency requirement violates *Cort v. Crabtree,* 113 F.3d 1081 (9th Cir.1997).

In *Cort,* the Ninth Circuit held that a change notice "applies only to prisoners who had neither entered the substance abuse treatment program nor received favorable eligibility determinations as of the date of its issuance." *Id.* The habeas petitioners in *Cort* were serving sentences for unarmed robbery pursuant to 18 U.S.C. § 2113(a). Each petitioner had entered into a drug treatment program, and the BOP advised all but one of the petitioners that they were eligible for a § 3621(e)(2)(B) sentence reduction. Soon thereafter, the BOP issued Program Statement 5162.02, stating that § 2113(a) offenses may or may not render a prisoner ineligible for a sentence reduction, depend-

ing upon the characteristics of the offense as specified in the prisoner's presentence report. Subsequently, the BOP issued Change Notice–01 which amended Program Statement 5162.02 to categorize all bank robbery offenses as "crimes of violence." As a result of the amendment, the BOP re-evaluated the petitioners' eligibility statuses and informed them that they were no longer eligible for the sentence reduction. The Ninth Circuit held that the new rule could not be applied retroactively; rather, it could be applied only to those prisoners who had neither entered the substance abuse treatment program nor received favorable eligibility determinations as of the date of its issuance. 113 F.3d at 1086–87. Accordingly, the BOP remained bound by its initial determination that the petitioners were statutorily eligible for sentence reductions under 18 U.S.C. § 3621(e)(2)(B). *Id.*

The present case falls squarely within the reasoning of *Cort.* The BOP first determined that petitioner's completion of the FCI Tucson program entitled him to an early release. Then it determined that in order to receive the sentence-reduction, petitioner must transfer to FCI Sheridan in Oregon and complete a residential aftercare program, but he need not re-enroll in the residential treatment program. After petitioner had done everything the BOP asked of him, it reinterpreted its own regulation to preclude petitioner from receiving his early release, even though petitioner lost his chance to re-enroll in residential treatment by following the BOP's instructions. As stated by the United States Supreme Court and reemphasized by the Ninth Circuit, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Cort,* 113 F.3d at 1084 (quoting *Landgraf*). The BOP's revocation of petitioner's eligibility for sentence reduction was retroactive, and it was invalid.

While the BOP argues, correctly, that 18 U.S.C. § 3621 itself requires residential treatment in order to be eligible for early release, the doctrine of promissory estoppel precludes the government from invoking § 3621's residency requirement against petitioner. " '[W]here justice and fair play require it,' estoppel will be applied against the government, even when the government acts in its sovereign capacity if the effects of estoppel do not unduly damage the public interest." *Johnson v. Williford,* 682 F.2d 868, 871 (9th Cir.1982) (quoting *United States v. Lazy FC Ranch,* 481 F.2d 985, 988–89 (9th Cir.1978)). In *Johnson,* a prisoner had been released on parole and successfully reintegrated into the community before the government decided it had erroneously granted the release and sought to reconfine the former prisoner, even though the prisoner's case had been extensively reviewed and he had done everything asked of him. The court found, "The frustration of [the paroled prisoner's] expectations would be a serious injustice. Even convicted criminals are entitled to be treated by their government in a fair and straightforward manner." *Id.* at 872.

In this case the BOP told petitioner that the FCI Tucson program he had previously completed did not meet the residency requirements for early release but he need not re-enroll in the treatment portion of the program if he were willing to be transferred to FCI Sheridan and live and participate in its residential aftercare program. The BOP determined that petitioner had done so successfully and arranged for him to be placed in a half-way house. Obviously, under these circumstances, an injustice would occur if petitioner were now denied early release on the basis of his residency when he followed the BOP's dictates to his own determinant. Moreover, there is no serious risk to the public because the BOP already determined petitioner is suitable for placement in a half-way house. Therefore, in accordance with *Johnson,* even though the statute itself arguably requires the residency to occur

during the treatment itself rather than during aftercare, the government is estopped from denying petitioner early release on this basis.[1]

**THEREFORE, IT IS HEREBY ORDERED:**

1. The petition for writ of habeas corpus, (doc. 1), is granted to the following extent: Petitioner is entitled to a one-year sentence reduction if he successfully completes all three phases of his substance-abuse program. The BOP is prohibited from denying petitioner's sentence-reduction eligibility on the ground that he completed his drug and alcohol treatment program at FCI Tucson and his residency requirement at FCI Sheridan.

2. All other pending motions are denied as moot.

---

**1.** Petitioner easily satisfies the additional traditional estoppel requirements, namely that (1) the government knew the facts, (2) intended for petitioner to act in accordance with its assertions as to his eligibility, (3) petitioner was ignorant of the facts, and (4) he relied on the government's conduct to his detriment. *Johnson,* 682 F.2d at 872.

It should be noted that in *Weaver v. Maass,* 53 F.3d 956, 961 (9th Cir.1995), the Court of Appeals distinguished *Johnson* partly on the ground that the state habeas petitioner was still in custody and had not been released. The fact that the petitioner had suffered no detriment from the parole board's refusal to abide by an earlier statement that it would consider setting a new release date was an implicit foundation of the court's ruling. *See id.* In this case, on the other hand, Dowling was clearly prejudiced by the BOP's representations that he could complete the residency requirement during aftercare. As described above, he lost his chance to re-enroll in residential treatment as a result of the BOP's actions. Thus, *Weaver's* limitation on *Johnson* has no application under these circumstances.