**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STEVEN M. GRIGGS,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA;
JANET RENO; KATHLEEN HAWK;
BOB GUZIK,

Defendants-Appellees.

No. 02-6298
(D.C. No. 98-CV-690-M)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TYMKOVICH** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Steven M. Griggs, a federal inmate currently incarcerated at the Federal Medical Center in Fort Worth, Texas, appeals the order entered by the United States District Court for the Western District of Oklahoma denying his motion to compel an officer or agency of the United States to perform its duty. Our jurisdiction arises under 28 U.S.C. § 1291. Because plaintiff is challenging the execution of his sentence, we construe his motion to compel as a petition for a writ of habeas corpus under 28 U.S.C. § 2241. We further conclude that plaintiff was required to file his § 2241 petition in the federal district in which he is confined, and that the Oklahoma district court therefore did not have jurisdiction to decide his § 2241 petition. Accordingly, we vacate the order of the district court, and remand to the district court with directions to transfer this action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1631.

I.

Plaintiff pled guilty to one count of conspiring to manufacture, distribute, or possess 100 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). At his sentencing, plaintiff received a two-level sentencing enhancement under USSG § 2D1.1(b)(1) for possessing a firearm during the commission of the drug offense, and he was sentenced to a 292-month prison term. Plaintiff served an initial portion of his sentence at the Federal Correctional

Institute (FCI) in El Reno, Oklahoma. *See* R., Doc. 1, Attach. 1, Exs. C, D. In May 1997, plaintiff was transferred to the Federal Transfer Center (FTC) in Oklahoma City, Oklahoma. *Id.*, Attach. 1 at 4. In January 2001, plaintiff was transferred to the Federal Medical Center (FMC) in Fort Worth, Texas, where he remains incarcerated at the present time. *Id.*, Doc. 16 at 3-4,

Under 18 U.S.C. § 3621(e)(2)(B), "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [residential substance abuse] treatment program may be reduced by the Bureau of Prisons (BOP), but such reduction may not be more than one year from the term the prisoner must otherwise serve." Although the statute does not define the term "nonviolent offense," the BOP published a regulation in June 1995 to implement § 3621(e)(2)(B). The 1995 regulation provided, in relevant part, that:

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, . . . unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. [§] 924(c)(3).

28 C.F.R. § 550.58 (1995); *see also* 60 Fed. Reg. 27692.

To explain its interpretation of the term "crime of violence," the BOP issued Program Statement No. 5162.02 in July 1995. *See* R., Doc. 7, Ex. 2 at 5. The July 1995 Program Statement listed 21 U.S.C. § 841(a)(1) as an offense that could be considered a "crime of violence" if the commission of the crime

involved the use, attempted use, or threatened use of force or presented a substantial risk that force might be used. *Id.* at 13-15. In April 1996, the BOP amended Program Statement No. 5162.02 in order to further clarify the BOP's definition of the term "crime of violence." *Id.* at 2-4. The amended Program Statement provided that a drug trafficking offense under § 841(a)(1) is a "crime of violence" if the offender received a sentencing enhancement under USSG § 2D1.1 for possessing a firearm. *Id.* at 14.

Plaintiff entered a 500-hour residential drug abuse treatment program at the FCI in El Reno, Oklahoma, in November 1995. *Id.*, Doc. 1, Attach. 1, Ex. B. In January 1996, while he was still attending the program, plaintiff was informed by a prison official at the FCI that his "offense . . . was judged to be a crime of violence as defined in 18 U.S.C. [§] 924(c)(3), Program Statement 5162.02," and that he therefore had "been determined to be ineligible for early release under the new drug abuse program guidelines." *Id.*, Ex. C. Nonetheless, plaintiff continued to participate in the treatment program, and he completed the program on January 9, 1997. *Id.*, Ex. D. After completing the program and following his transfer to the FTC in Oklahoma City, plaintiff filed an administrative request for a one-year sentence reduction under § 3621(e)(2)(B). The warden at the FTC denied plaintiff's request in August 1997, citing Program Statement No. 5162.02. *Id.*, Ex. G. Plaintiff then filed two administrative

appeals within the BOP, and the BOP denied both appeals based on Program Statement No. 5162.02. *Id.*, Exs. H, I.

During this same time period, the validity of the BOP's definition of the term "crime of violence" to include drug offenses that involved sentencing enhancements for possessing a firearm was being litigated in the courts of appeals. The majority of circuits, including this court in *Fristoe v. Thompson*, 144 F.3d 627, 631-32 (10th Cir. 1998), held that the definition was invalid on the basis "that § 3621(e)(2)(B) required the [BOP] to look only to the offense of conviction (drug trafficking), and not to sentencing factors (firearm possession), in determining whether an offender was convicted of a 'nonviolent offense.'" *Lopez v. Davis*, 531 U.S. 230, 234 (2001). In response to these judicial decisions, the BOP published an amended version of 28 C.F.R. § 550.58 that went into effect on October 9, 1997. *Id.* at 235; *see also* 62 Fed. Reg. 53690. As the Supreme Court explained in *Lopez*,

> Like the 1995 rule, the [1997] regulation exclude[d] from early release eligibility offenders who possessed a firearm in connection with their offenses. In contrast to the earlier rule, however, the 1997 regulation [did] not order this exclusion by defining the statutory term "prisoner convicted of a nonviolent offense" or the cognate term "crimes of violence." Instead, the [1997] regulation relie[d] upon the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude enumerated categories of inmates.

*Lopez*, 531 U.S. at 235 (quotation omitted). The 1997 version of § 550.58 went into effect while plaintiff was incarcerated at the FTC in Oklahoma City. However, the prison officials at the FTC made no attempt to apply the 1997 regulation to plaintiff.

In January 1998, plaintiff filed a civil complaint in the United States District Court for the District of Columbia, naming the warden of the FTC, the director of the BOP, the United States Attorney General, and the United States of America as defendants. *See* R., Doc. 1, Attach. 1 at 2-3. In his complaint, plaintiff claimed that the BOP exceeded its statutory authority in denying him a one-year sentence reduction under § 3621(e)(2)(B). *Id.* at 6. Because plaintiff was incarcerated at the FTC in Oklahoma City at the time he filed his complaint, the case was transferred to the Western District of Oklahoma. *Id.*, Doc. 1. In the meantime, this court published its opinion in *Fristoe* in April 1998. In *Fristoe*, we addressed the 1995 version of § 550.58 and Program Statement No. 5162.02, and we held that "[t]he BOP's program statement definition of a 'nonviolent offense' is not well-reasoned, and fails to persuade us that it is entitled to deference. The BOP's interpretation violates the plain language of [§ 3621(e)(2)(B)] and cannot be upheld." *Fristoe*, 144 F.3d at 631.

Despite our decision in *Fristoe*, defendants filed a motion to dismiss in the Oklahoma district court case, arguing that plaintiff was properly denied a

-6-

sentence reduction based on the 1995 regulation and Program Statement. *See* R., Doc. 7 at 3-4, 6-11. In addressing defendants' motion to dismiss, the magistrate judge construed the relevant portions of plaintiff's complaint as a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Id.*, Doc. 11 at 3. Based on *Fristoe*, the magistrate judge further concluded that plaintiff was "entitled to be considered for a § 3621 sentence reduction, although the BOP has discretion under § 3621(e)(2)(B) to determine whether or not Plaintiff is granted a sentence reduction." *Id.* at 7. Consequently, the magistrate judge recommended that the Oklahoma district court grant plaintiff's § 2241 habeas petition "to the extent that the BOP is directed to consider . . . whether Plaintiff should receive a sentence reduction under 18 U.S.C. § 3621 for his successful completion of the drug treatment program without reliance upon sentencing factors." *Id.* at 8. On December 31, 1998, the Oklahoma district court entered an order granting the recommended habeas relief. *Id.*, Doc. 13 at 3.

On January 28, 1999, defendants filed a response to the Oklahoma district court's order granting habeas relief, and they informed the court that "Plaintiff's eligibility for early release pursuant to 18 U.S.C. § 3621(e) was reviewed and **granted** on October 20, 1998. Plaintiff's projected satisfaction date has been recalculated and is presently March 5, 2014, instead of March 5, 2015." *Id.*, Doc. 14 at 1. Because the court had ordered the case closed in its December 31, 1998

-7-

order granting habeas relief, *id.*, Doc. 13 at 3, and neither plaintiff nor defendants filed an appeal regarding the order, this marked the termination point of the Oklahoma district court case.

Some two years later, in January 2001, plaintiff was transferred to the FMC in Fort Worth, Texas. *Id.*, Doc. 16 at 3-4. In January 2001, the Supreme Court also issued its decision in *Lopez*. In *Lopez*, the Supreme Court addressed the validity of the 1997 version of § 550.58, and the Court upheld the 1997 regulation, concluding that the BOP "reasonably concluded that an inmate's prior involvement with firearms . . . suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." *Lopez*, 531 U.S. at 244.

In September 2001, the prison officials at the FMC informed plaintiff that it "[did] not appear that [he was] provisionally eligible for an early release" under § 3621(e)(2)(B). R., Doc. 18, Attach. at 2. The proffered explanation for this determination was that "[a]pplication of Lopez v. Davis appears to make inmate ineligible for early release consideration." *Id.* Plaintiff's sentence was therefore recalculated to reinstate the one year that had previously been reduced from his sentence, and the prison officials at the FMC recalculated plaintiff's sentence "because of the Lopez decision." *Id.*, Doc. 17, Ex. 1 at 3.

On September 4, 2001, plaintiff filed his motion to compel an officer or agency of the United States to perform its duty in the Oklahoma district court. *Id.,* Doc. 16. In his motion and supporting briefs, plaintiff argued that the BOP violated his due process rights and the principle that retroactivity is not favored in the law when it rescinded his eligibility for the one-year sentence reduction. Plaintiff therefore requested that the court direct the BOP to reinstate his eligibility for an early release and recompute his sentence. On August 2, 2002, the Oklahoma district court entered an order denying plaintiff's motion to compel, concluding that no constitutionally protected liberty interest was created when plaintiff was granted the one-year sentence reduction, and that the prison officials at the FMC did not retroactively apply a new BOP policy to plaintiff. *Id.*, Doc. 30 at 4-6. Plaintiff is now appealing from the August 2, 2002 order of the Oklahoma district court.

II.

Plaintiff is challenging the execution of his sentence in his motion to compel, and we construe the motion as a petition for a writ of habeas corpus under 28 U.S.C. § 2241. In addition, because plaintiff is currently confined at the FMC in Fort Worth, Texas, we further conclude that plaintiff was required to file his petition in the United States District Court for the Northern District of Texas, *see Haugh v. Booker*, 210 F.3d 1147, 1149 (10th Cir. 2000), and that the

-9-

Oklahoma district court therefore did not have jurisdiction to decide plaintiff's petition, *see United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986); *accord Dunne v. Henman*, 875 F.2d 244, 249-50 (9th Cir. 1989) (holding that prisoner seeking habeas relief under § 2241 "must name the warden of the penitentiary where he is confined as respondent and file his action in the district court whose territorial limits include his place of confinement"); *Vasquez v. Reno*, 233 F.3d 688, 690-91 (1st Cir. 2000) (addressing § 2241 habeas petitions and noting that "the court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody," and that "a prisoner's proper custodian for purposes of habeas review is the warden of the facility where he is being held"). [1]

We have recognized that "[j]urisdictional defects that arise when a suit is filed in the wrong federal district may be cured by transfer under the federal transfer statute, 28 U.S.C. § 1631, which requires a court to transfer such an action 'if the transfer is in the interest of justice.'" *Haugh*, 210 F.3d at 1150. "Nonetheless, . . . a court is authorized to consider the consequences of a transfer by taking 'a [quick look] at the merits' to avoid raising false hopes and wasting

---

[1]     "It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. United States Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985).  Because the Oklahoma district court case was closed two years before plaintiff was transferred to the FMC in Fort Worth, Texas, *see* R., Doc. 13 at 3, this rule is inapplicable to this case.

-10-

judicial resources that would result from transferring a case which is clearly doomed." *Id.* (quotation omitted). Having taken a "quick look" at the merits of plaintiff's claims, we conclude that plaintiff's claims have sufficient merit to warrant a transfer to the Northern District of Texas.

As a starting point, plaintiff has a potentially meritorious claim that the 1997 version of § 550.58 was applied to him retroactively since he completed the drug treatment program at the FCI in El Reno, Oklahoma before the effective date of the regulation. In fact, the BOP has "concede[d]" in other cases raising similar retroactivity issues that the 1997 regulation is "not applicable to an inmate who had entered or completed treatment at the time the new regulations were promulgated." *Grove v. Fed. Bureau of Prisons*, 245 F.3d 743, 747 (8th Cir. 2001). This is consistent with the fact that the 1997 regulation was not applied to plaintiff as a basis for denying his administrative request for a sentence reduction during the time he was incarcerated at the FTC in Oklahoma City. Instead, the prison officials relied exclusively on the 1995 version of the regulation. As a result, it appears that, after the Supreme Court issued its opinion in *Lopez* in January 2001, the prison officials at the FMC in Fort Worth applied the 1997 regulation to plaintiff for the first time, thus raising both retroactivity and due process concerns. *Cf. Hunnicutt v. Hawk*, 229 F.3d 997, 1001 (10th Cir. 2000) (noting that Ninth Circuit held in *Cort v. Crabtree*, 113 F.3d 1081, 1086-87 (9th

-11-

Cir. 1997) that "unfavorable changes to BOP rules construing § 3621(e)(2)(B) cannot be applied retroactively to prisoners who qualified for early release under the former rules and who started the substance abuse treatment program prior to the change," but concluding that no due process violation occurred where BOP applied 1997 version of § 550.58 to a prisoner who had entered a drug treatment program after the 1997 regulation went into effect); *see also Grove*, 245 F.3d at 747 (indicating that prisoner may have a meritorious claim of retroactivity based on application of the 1997 version of § 550.58 if prisoner had entered or completed a drug treatment program prior to the enactment of the 1997 regulation). [2]

With respect to plaintiff's claim that he had a constitutionally protected liberty interest in an early release, it is well established that "[t]he Constitution does not itself afford [a prisoner] a liberty interest in a reduced sentence. A convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence." *Fristoe*, 144 F.3d at 630. We

---

[2]      Although plaintiff has not expressly asserted a claim under the Ex Post Facto Clause, we note that a retroactive application of the 1997 version of § 550.58 could potentially form the basis for an ex post facto violation. *See Lynce v. Mathis*, 519 U.S. 433, 446-47 (1997) (holding that Ex Post Facto Clause was violated where statute retroactively made entire class of prisoners ineligible for early release); *see also Smith v. Scott*, 223 F.3d 1191, 1193-94 (10th Cir. 2000) (holding that "an agency regulation which is legislative in nature is encompassed by [the ex post facto] prohibition").

have also recognized that "[a] statute which allows a decisionmaker to deny the requested relief within its unfettered discretion does not create a constitutionally-recognized liberty interest." *Id.* Nonetheless, in this case, it is undisputed that, in October 1998, the prison officials at the FTC in Oklahoma City exercised their discretion and granted plaintiff a reduced sentence. *See* R., Doc. 14 at 1. And, while it appears that plaintiff was still required to meet certain conditions in order to maintain his eligibility for the early release, *see* 28 C.F.R. § 550.58(a)(2)(i)-(ii) (1995), the documentation that defendants submitted to the Oklahoma district court in January 1999 as part of their showing that plaintiff had been granted an early release does not contain any such conditions. *See* R., Doc. 14. Consequently, while it may turn out that plaintiff's eligibility for the early release was merely "provisional" as defendants claim, *id.*, Doc. 17, Ex. 1 at 2, we are not satisfied that defendants have made a sufficient showing in this regard on the record before this court. Thus, we cannot say that plaintiff's due process claim is "clearly doomed." *Haugh*, 210 F.3d at 1150.

Finally, we note that defendants have adopted a completely new position in the briefs they have submitted to this court. Specifically, defendants have conceded that "[t]he Lopez analysis should not have been applied directly" to declare plaintiff ineligible for an early release, and they base this assertion on their additional concession that *Lopez* "analyzed the early release policy that was

-13-

the successor of [the] policy which should have properly been applied to this case." Resp. to Aplt. Br. at 1. Defendants further argue that, because plaintiff is now incarcerated within the Fifth Circuit, this court must reevaluate plaintiff's request for an early release under the Fifth Circuit's decision in *Venegas v. Henman*, 126 F.3d 760 (5th Cir. 1997). *See* Aplee. Br. at 5-6. Although it is difficult to follow defendants' argument regarding the applicability of *Venegas*, and we believe the argument may be frivolous, defendants' argument further convinces us as to the propriety of a transfer to the Northern District of Texas.

The order of the United States District Court for the Western District of Oklahoma dated August 2, 2002 is VACATED, and this matter is REMANDED to that court with directions to transfer this action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1631. [3]

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[3] We leave it for the transferee court to determine whether any persons or entities in addition to the warden of the FMC in Fort Worth, Texas should be named as defendants in the transferred case. We also leave it to the transferee court to dismiss out any improperly-named defendants.