**Edwin SANTOS, Petitioner,**

**v.**

**Art BEELER, Warden, Respondent.**

**Civil Action No. 98–1347.**

United States District Court,
D. New Jersey.

March 9, 1999.

Edwin Santos, Flushing, NY, pro se.

Faith S. Hochberg, United States Attorney, Dorothy J. Donnelly, Assistant United States Attorney, Trenton, NJ, for Respondent.

## OPINION

ORLOFSKY, District Judge.

Petitioner, Edwin Santos ("Santos"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,[1] alleging that Respondent, Arthur Beeler, on behalf of the Federal Bureau of Prisons (the "BOP"), has impermissibly refused to consider him for a sentence reduction as authorized by 18 U.S.C. § 3621(e)(2)(B),[2] which permits the Bureau of Prisons "to grant a sentence reduction of up to one year to prisoners convicted of 'nonviolent offenses' who complete a substance abuse treatment program." *Cort v. Crabtree*, 113 F.3d 1081, 1082 (9th Cir.1997). This case presents an issue of first impression in this Circuit, namely, whether an administrative agency can apply a change to a rule or regulation retrospectively on an individual who has acted in reliance upon the prior version of the rule or regulation, without violating the presumption against retroactivity as set forth by the Supreme Court in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), and *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). For the reasons that follow, I conclude that the retroactive application of the revised regulation to Santos in the circumstances of this case contravenes the presumption against retroactivity.

1. Section 2241 provides, in part:
 (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
 (b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.
 (c) The writ of habeas corpus shall not extend to a prisoner unless—
 (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
 (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
 (3) He is in custody in violation of the Constitution or laws or treaties of the United States ...

2. Section 3621(e) provides, in part: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). The section defines a qualifying drug treatment program as "a course of individual and group activities, lasting between 6 and 12 months, in residential treatment facilities set apart from the general prison population[, which is] directed at the substance abused problems of the prisoner ... and [is] intended to develop the prisoner's cognitive, behavioral, social, vocational, and other skills so as to solve the prisoner's substance abused and related problems." § 3621(e)(5)(A).

Petitions filed under § 2241 "are rarely granted," *Felker v. Turpin*, 518 U.S. 651, 665, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (quoting Supreme Court Rule 20.4(a)), however, in this case, I find that this is one of those rare instances in which I must grant a writ of habeas corpus under § 2241. Specifically, I find that the BOP's application of its revised definition of "crime of violence" in this case constitutes an impermissible retroactive application of an administrative regulation. Accordingly, I find that Santos is entitled to be considered for a one-year sentence reduction under § 3621(e)(2)(B) and, therefore, I will grant his petition for a writ of habeas corpus. I also find, however, that the BOP did not act arbitrarily, capriciously, in abuse of its discretion, or otherwise contrary to law in determining that violations of 18 U.S.C. § 922(b)(5) [3] and (d)(1),[4] two of the statutes under which Santos was convicted, are crimes of violence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. On March 1, 1994, Santos was sentenced to a total of 60 months for several convictions relating to the sale of a firearm to a convicted felon. *See* Petition for Writ of Habeas Corpus under 28 [U.S.C.] § 2241 ("Petition"), filed Mar. 13, 1998, ¶ I; Respondent's Answer to Petition for Writ of Habeas Corpus ("Answer"), filed May 8, 1998, at 7. Throughout the relevant time period, February of 1996 to January of 1998, Santos served this sentence at FCI Fort Dix. *See* Petition ¶ I(c); Answer at 8. "Assuming that he receives all Good Conduct Time available to him under 18 U.S.C. § 3624(b)," Answer at 7, Santos is scheduled to be released on March 25, 1999.[5] *See id.;* Petition ¶ I(d).

On February 21, 1996, while at Fort Dix, the BOP informed Santos that he was eligible under § 3621(e) to be considered for a one-year reduction in his sentence should he complete a substance abuse program. *See* Answer at 8, 10; Petition ¶ II(a).[6] The BOP made this determination based on an administrative regulation, which, at that time, deemed the following categories of inmates to be ineligible for consideration for a possible sentence reduction:

INS detainees, pretrial inmates, contractual boarders (for example, D.C., State

---

3. Section 922(b)(5) proscribes the sale or delivery of:

any firearm or armor-piercing ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

4. Section 922(d)(1) provides:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.

5. The possibility that Santos may be released at the end of this month does not make the issue presented by his petition moot. *See*

*Carafas v. LaVallee*, 391 U.S. 234, 239, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (holding that § 2241 "does not limit the relied that may be granted to discharge of the applicant from physical custody"). Upon release, Santos will still be required to serve a period of supervised release. Should Santos receive a sentence reduction, his period of supervised release will be reduced. "Because of these 'disabilities or burdens [which] may flow from' petitioners'" denial of a possible one-year reduction in his term of supervised release, "the case is not moot." *Id.* at 237–38, 88 S.Ct. 1556 (holding that a petition for a writ of habeas corpus is not moot so long as the petition challenges significant burdens that have been placed on the petitioner's liberty, such as those inherent imposed under supervised release) (quoting *Fiswick v. United States*, 329 U.S. 211, 222, 67 S.Ct. 224, 91 L.Ed. 196 (1946)).

6. Santos alleges that he was first informed of his eligibility in February of 1995, not 1996. This factual discrepancy is immaterial to the resolution of Santos's Petition.

or military inmates), inmates whose current offense is determined to be a·crime of violence as defined in 18 U.S.C. [§ ] 924(c)(3), inmates who have a prior conviction for homicide, forcible rape, robbery, or aggravated assault, and inmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion.

28 C.F.R. § 550.58 (1995). The definition contained in 18 U.S.C. § 924(c)(3) (1984), in turn, provided that a "crime of violence" is one:

(A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Based on 28 C.F.R. § 550.58 and 18 U.S.C. § 924(c)(3), the BOP determined that Santos's offenses, which involved the illegal sale of a firearm, were not crimes of violence and, therefore, Santos was eligible for a possible one-year reduction under § 3621(e). *See* Answer at 8.

At the time that the BOP made this determination, Santos was assigned to a section of Fort Dix that did not offer a residential drug treatment program as described in § 3621(e). *See* Petition ¶ II(b). As a result, Santos requested and received a transfer from Fort Dix East to Fort Dix West. *See id.; see also id.* at 8. On April 16, 1997, Santos "commenced the 500 hour Residential Drug Abuse Treatment Program," which he completed on January 13, 1998. Answer at 8; *see also* Petition ¶¶ II(d)-(f), (r).

Meanwhile, the BOP had issued "Change Notice CN–01" on April 23, 1996, which changed internal procedures for determining eligibility under § 3621(e). Change Notice CN–01 amended the definition of "crime of violence" contained in

Program Statement 5162.02, by adding firearms violations to the list of violent crimes. *See* Answer at Ex. 1h (Change Notice CN–01). As a result of this change in internal policy, the BOP reevaluated Santos's eligibility for early release and, on November 5, 1996, the BOP determined that Santos was ineligible. *See id.* at 13 & Ex. 1f ("Inmate History Drug P[rograms]").

The BOP, however, did not inform Santos of this change until August 15, 1997. *See* Petition ¶ II(g); *see also id.* at 9. This fact is undisputed, since Beeler does not allege that Santos received notice at an earlier time. Beeler merely states that the BOP changed its determination of Santos's eligibility on November 5, 1996, not that it gave Santos notice. *See* Answer at 13. Further, Beeler has submitted voluminous pages of exhibits in support of his Answer, none of which provide evidence that Santos received notice of this change at any time prior to September 11, 1997. *See id.,* Ex. 1b ("Informal Resolution Form (BP–8)").

On July 17, 1997, months after the BOP issued Change Notice CN–01, the Third Circuit, in *Roussos,* concluded that a part of the process that the BOP used to determine whether a crime was violent "was inconsistent with the clear language of the statute." *Roussos v. Menifee,* 122 F.3d 159, 164 (3d Cir.1997). Specifically, the Third Circuit held that "the BOP erred by considering sentencing factors (such as a firearms enhancement under the Guidelines) in lieu of the unambiguous statutory language which speaks only in terms of conviction." *Id.* at 162. Because of this decision, the BOP was forced to reconsider its policies in defining crimes of violence.

Despite the narrowness of the holding in *Roussos,* the BOP substantially altered 28 C.F.R. § 550.58, by adding a definition of "crime of violence" in place of the reference to 18 U.S.C. § 924(c)(3). Adopted on October 15, 1997, after Santos had been in

the drug treatment program for five months, the new regulation provided:

> As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release: (i) INS detainees; (ii) Pretrial inmates; (iii) Contractual boarders (for example, D.C., State, or military inmates); (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses; (v) Inmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion; (vi) *Inmates whose current offense is a felony:* (A) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or (B) *That involved the carrying, possession, or use of a firearm* or other dangerous weapon or explosives (including any explosive material or explosive device), or (C) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or (D) That by its nature or conduct involves sexual abuse offenses committed upon children.

28 C.F.R. § 550.58 (1997) (emphasis added). Since the BOP had already added firearms violations to the list of crimes of violence in Change Notice CN–01, this change merely reinforced Santos's ineligibility for a possible sentence reduction under § 3621(e).

Upon learning of his possible ineligibility for a sentence reduction in August of 1997, Santos filed an "Inmate Request to Staff Member" on September 9, 1997, asking his case manager, Clement Shacks, to "check [his] eligibility for the time off for successful completion of 500 hr Drug Program." Answer, Ex. 1b. Shacks responded two days later, writing that "[t]wo of the four offenses you were convicted for falls [sic] under Section 7," which lists crimes of violence. *Id.* In particular, Shacks wrote that Santos's convictions for violations of § 922(b)(5) and (d)(1) had been classified as crimes of violence by the BOP, thereby disqualifying Santos from consideration for a one-year sentence reduction. *Id.* Santos then filed an "Informal Resolution Form," requesting reconsideration of this determination. *See id.* The response Santos received was terse, but similar in substance. *See id.* Counselor Diaz wrote that "contact with staff reveals that due to some of your offenses you were convicted for falls [sic] under crimes of violence." *Id.*

Santos continued to pursue an administrative remedy by filing a "Request for Administrative Remedy" with Defendant, Beeler, on October 10, 1997, in which Santos "request[ed] that [he] be reconsidered for the one (1) year sentence reduction for successful completion of the 500 hour drug program." Answer, Ex. 1b; *see also* Petition ¶ II(j). Beeler responded: "Your current violations under 18 U.S.C. § 922(b)(5) and (d)(1) are listed as . . . crimes of violence under Section 7 [of the applicable Program Statement]. Therefore, you are ineligible to receive a sentence reduction pursuant to 18 U.S.C. § 3621(e)." *Id.*

Santos appealed this decision, first to the Regional Director of the BOP, and then to the General Counsel for the BOP. Both of these appeals were unsuccessful. As a result, Santos filed this petition for a writ of habeas corpus, arguing that the court should require the BOP to consider him for a one-year reduction.

In his petition, Santos argues that the BOP's definition of "crime of violence" to include two of his offenses is overbroad and unreasonable. *See* Petition at 5–7. Santos also argues that the application of Change Notice CN–01 to him constitutes a retroactive application of an administrative regulation, which violates the Ex Post Facto Clause of the United States Constitution. *See id.* at 7–10. Finally, Santos contends that, since he reasonably relied upon the BOP's initial eligibility determination in making his decision to transfer to

another section of Fort Dix and to complete four months of the nine-month substance abuse program, the BOP is now estopped from changing his eligibility status.

## II. ANALYSIS

Santos's petition raises three issues, which I will address in the order in which he presents them.

### A. Has the BOP Adopted An Arbitrary And Capricious Definition of "Crimes of Violence"

In his Petition, Santos argues that the BOP adopted an "impermissible interpretation" of § 3621(e)(2)(B) when it determined that two offenses for which he was convicted, namely, selling a firearm without proper record-keeping and selling a firearm to a felon, in violation of 18 U.S.C. § 922(b)(5) and (d)(1), did not qualify as "nonviolent offenses" under § 3621(e)(2)(B). *See* Petition at 7. On this basis, Santos claims that he "should not have been denied a one (1) year reduction [up]on completion of the 500 hour Drug Awareness Program." *Id.*

■ "This Court does not review BOP decisions *de novo.*" *Paydon v. Hawk,* 960 F.Supp. 867, 870 (D.N.J.1997) (Orlofsky, J.). Instead, "pursuant to the Administrative Procedure Act ('APA'), this Court's review of such BOP classification decisions is limited to whether the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Id.* (quoting 5 U.S.C. § 706(2)(a)); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In *Paydon,* I held that the BOP's classification of a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, as a "crime of violence" was neither arbitrary nor capricious. *See Paydon,* 960 F.Supp. at 870–71. In that decision, I noted that "[a]ll of the district courts within this Circuit which have considered [whether the BOP properly classified § 922(g)(1) as a crime of violence] have concluded that the BOP neither acts in an arbitrary or capricious manner, nor abuses its discretion, nor violates any federal law by classifying a violation of § 922(g)(1) as a crime of violence" within the meaning then employed by the BOP. *Id.* at 870. I concluded that, "in light of the very deferential legal standard of review which this Court must apply to BOP decisions," the BOP's "'determination that felon in possession of a weapon is not a violent offense under 18 U.S.C. § 3621(e)(2)(B) is within the discretion Congress gave the [BOP] for the administration of the residential treatment program.'" *Id.* at 870–71 (quoting *Piccolo v. Lansing,* 939 F.Supp. 319, 320–21 (D.N.J.1996)).

In *Royce v. Hahn,* the Third Circuit observed that my opinion in *Paydon* "preceded the [October 15, 1997,] change in the [BOP's] regulations." *Royce v. Hahn,* 151 F.3d 116, 121 n. 4 (3d Cir.1998). This observation, however, does not undermine the notion that the BOP has substantial latitude in interpreting the phrase "nonviolent offense" for the purpose of applying § 3621(e)(2)(B). Further, the Third Circuit's decision in *Royce* is inapposite here, because that opinion considered the BOP's interpretation of 18 U.S.C. § 4042(b),[7] rather than § 3621(e)(2)(B). The Third Circuit concluded that, in enacting § 4042(b), "Congress did not leave the crime of violence definition ... open-ended[,] ... [u]nlike the situation" present by § 3621(e)(2)(B). *Id.* at 123.

Moreover, as I noted in *Paydon:*
[T]he Third Circuit has affirmed the district court's decision in *Litman,* in which

---

7. Section 4042(b) "requires the [BOP] to notify local law enforcement authorities of the imminent release of inmates who had committed violence crimes and provide their names, criminal history, parole restrictions, and proposed residence." *Royce,* 151 F.3d at 117.

Judge Rodriguez explicitly held that the determination that "a conviction under 18 U.S.C. § 922(g)(1) constitutes a 'crime of violence' [within the meaning of § 924(c) ] is within the discretion of the Bureau of Prisons."

*Paydon,* 960 F.Supp. at 871 (quoting *Litman v. Morris,* No. 96–1207, slip op. at 6, *aff'd* 107 F.3d 7 (3d Cir.1997)). Thus, my determination in *Paydon* that the BOP possesses significant latitude in defining "nonviolent offense" or "crime of violence" for the purpose of § 3621(e)(2)(B) remains undisturbed.

■ In this case, the BOP has determined that the sale of a firearm without proper record-keeping, or to a felon is a crime of violence. Trafficking in firearms has the potential to enable and facilitate endless violence, because a dealer can sell numerous weapons to many dangerous individuals, who, in turn, can commit countless acts of violence. *See Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976) (holding that the purpose of the Gun Control Act of 1968, which prohibits the sale of firearms to felons, is to prevent irresponsible and dangerous persons from procuring firearms). Furthermore, by failing to keep records regarding such sales, an offender inhibits the ability of law enforcement officers to locate and track felons who possess firearms, which impairs the ability of law enforcement officers to prevent violent crime. Thus, there is a rational basis for the BOP's classification of § 922(b)(5) and (d)(1) as crimes of violence. Whether this classification is wise, advisable, or optimal is not a matter for this Court to consider.

Given the holding in *Paydon,* I cannot say that the BOP's determinations that § 922(b)(5) and (d)(1), which prohibit the sale of a firearm without proper record-keeping and the sale of a firearm to a felon, respectively, are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706(2)(a). Accordingly, I will uphold the BOP's classification of violations of § 922(b)(5) and (d)(1) as crimes of violence and deny Santos's petition for a writ of habeas corpus on the ground that the BOP exceeded its discretion in adopting this classification.

**B. Does the BOP's Application of Its Revised Definition of "Crime of Violence" to Santos ·Violate the Ex Post Facto Clause or the Presumption Against Retroactivity**

Santos contends that "the [BOP] violated [his] rights by implementing retrospective applications in violation of EX POST FACTO principals [sic]." Petition at 9. Specifically, Santos argues that the BOP changed its determination of his eligibility under 18 U.S.C. § 3621(e)(2)(B) "[o]n 8–15–97, after [he had] participate[ed for] four (4) months in [the] program." *Id.*

· ■ "[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (footnotes omitted); *see also Stiver v. Meko,* 130 F.3d 574, 578 (3d Cir.1997) (quoting *United States v. Dozier,* 119 F.3d 239, 241 (3d Cir.1997)). It is well-settled that "a statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as ex post facto with reference to that crime." *Rooney v. North Dakota,* 196 U.S. 319, 325, 25 S.Ct. 264, 49 L.Ed. 494 (1905). In other words, "[t]he Ex Post Facto Clause [merely] prohibits legislatures from retroactively altering the definition of crimes or increasing punishments." *Paydon v. Hawk,* 960 F.Supp. 867, 872 n. 6 (D.N.J.1997) (Orlofsky, J.). Since § 3621(e)(2)(B) "confers additional benefits to certain inmates as an incentive for participating in drug treatment and rehabilitation programs[, it in] no way redefines any crime, increases any punishment, or in any way deprives Petitioner of any rights which he had prior to its enactment." *See*

*id.* Accordingly, the BOP's change in its definition of "nonviolent offense" does not violate the Ex Post Facto Clause in this case.

Furthermore, Santos "suffers no disadvantage as a result of the regulation," because he began his sentence "before section 3621(e)(2)(B) was enacted." *See Stiver*, 130 F.3d at 578. Santos was convicted sometime before his sentencing, which occurred on March 1, 1994. *See* Answer, Ex. 1a ("Sentence Monitoring Computation Data"). Section 3621 was enacted on September 13, 1994, as part of the Violent Crime Control and Law Enforcement Act of 1994. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, §§ 20401, 32001, 108 Stat. 1824, 1896 (1994). Thus, at the time of his sentencing, Santos "could not have been eligible for a one-year sentence reduction for completing a substance abuse program, because the enabling statute did not yet exist." *See Stiver*, 130 F.3d at 578. As a result, the BOP's revision of its definition of "crime of violence" that functions to exclude Santos from eligibility for a one-year sentence reduction did not impose any disadvantages upon Santos that he did not face at the time of sentencing.

 Nonetheless, "even where the Ex Post Facto Clause is not formally applicable, 'prospectivity remains the appropriate default rule.'" *Cort v. Crabtree*, 113 F.3d 1081, 1084 (9th Cir.1997) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). In other words, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). "Th[is] presumption against . . . retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483.

 Neither Change Notice CN–01, issued on April 23, 1996, nor the revised 28 C.F.R. § 550.58, promulgated on October 15, 1997, make any mention of retroactive application. *See* Answer, Ex. 1h (Change Notice CN–01); 28 C.F.R. § 550.58; *see also Cort*, 113 F.3d at 1084 (determining that "there is no indication anywhere in the Change Notice that the [BOP] intended that any part of it would apply retroactively or serve to under prior eligibility determinations"). Thus, in following the "presumption against retroactivity," Change Notice CN–01 and the October 15, 1997, version of 28 C.F.R. § 550.58 should not be applied retroactively.

The Third Circuit has not considered the retroactive application of 28 C.F.R. § 550.58, however, the Ninth Circuit has addressed the issue. In *Cort v. Crabtree*, the Ninth Circuit applied the presumption against retroactivity and concluded that:

> [T]he Change Notice may not be construed as applying . . . to prisoners who had already undergone numerous hours of treatment and whose eligibility [the BOP] had already determined. Before an agency may disrupt "settled expectations" in such a manner, *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483, the language of the relevant regulation must compel such a result. [*See* ] *Bowen*, 488 U.S. at 208, 109 S.Ct. 468. It is indisputable that Change Notice CN–01 does not do so.

*Cort*, 113 F.3d at 1086. The Government argues that the holding reached in *Cort* does not apply in this case because Santos did not have "settled expectation[s since] . . . [h]e was deemed ineligible on 11/5/96," months before he began the drug treatment program on April 16, 1997. The "Inmate History Drug P[roga]ms" report for Santos reveals that, in fact, he was determined "18 U.S.C. § 3621 release ineligible" on November 5, 1996. Answer, Ex. 1f. Further, the "Agreement to Participate in a BOP Residential Drug Abuse Treatment Program," which Santos was

required to sign to participate in the program,[8] required Santos to affirm that he "understand[s] that if [he] is found eligible for an early release under 18 U.S.C. § 3621(e), *this eligibility is provisional, and may change.*" *Id.,* Ex. 1j (page 3).[9]

The Government, however, does not dispute that, while the BOP changed Santos's eligibility status on November 5, 1995, it did not provide Santos with notice of this change until August 15, 1997. *See* Petition ¶ II(g); *see also id.* at 9; Answer at 9. Beeler has submitted voluminous exhibits documenting the changes in Santos's eligibility status as well as the changes in the BOP's policies, however, not one of these exhibits contains evidence that Santos received notice of the change in his status until September of 1997.

Furthermore, on February 21, 1996, the BOP informed Santos that he was eligible for early release under § 3621 should he complete the residential drug treatment program. *See* Answer at 8; Petition ¶ II(a).[10] This type of "eligibility decision[ ] . . . do[es] not purport to attach any conditions subsequent to eligibility other than the successful completion of the program." *See Cort,* 113 F.3d at 1085. Consequently, this initial determination by the BOP provided Santos with an "expectation" that he would be considered for a sentence reduction should he complete the residential drug treatment program. Section 3621 inherently depends on the creation of such expectations as it serves as an "[i]ncentive for prisoners' successful completion of [the] treatment program." § 3621(e)(2); *see also Cort,* 113 F.3d at 1085 ("The express purpose of § 3621(e) is to provide prisoners with an 'incentive' to enter and complete a substance abuse treatment program."). Section § 3621(e) cannot function as an incentive for inmates to complete the treatment program unless

it creates "settled expectations" of possible release upon completion of the program. Thus, the BOP's initial determination that Santos was eligible for a possible sentence reduction encouraged him to expect that he would be considered for a one-year reduction in his sentence upon the successful completion of the program. *See* Petition at 9 (stating that "all documents relating to petitioner stated a non-violent status and continued eligibility under 18 USC 3621(e)").

Clearly, a change in Santos's status cannot "unsettle" this expectation unless and until he was informed of that change. It is undisputed that Santos did not receive notification of his changed eligibility status until August 15, 1997. *See* Petition ¶ II(g); *see also id.* at 9. Thus, for the first four months of his participation in the residential drug treatment program, Santos had "settled expectations" that he would be considered for a possible one-year sentence reduction. As a result, I find that any change in Santos's eligibility after four months of participation in the program would constitute a retroactive application of an administrative regulation, contrary to the presumption against retroactivity announced by the Supreme Court in *Bowen* and *Landgraf.* Accordingly, I will grant Santos's petition for a writ of habeas corpus and order Beeler, on behalf of the BOP, to consider Santos for a possible sentence reduction.

By granting Santos's petition, however, I am not ordering Beeler to reduce Santos's sentence by one year. Rather, I am ordering Beeler to consider granting such a reduction. I am only ordering Beeler to consider such a reduction, because § 3621(e)(2)(B) provides that the BOP "may" reduce "[t]he period [that] a prisoner convicted of a nonviolent offense remains in custody after successfully com-

---

8. An inmate was only eligible for a potential sentence reduction under § 3621 if he or she "sign[ed] an agreement acknowledging his/her program responsibility." 28 C.F.R. § 550.58 (1995).

9. The record does not reveal whether Santos actually signed such an agreement.

10. *See* note 2 *supra.*

pleting a treatment program." Since § 3621(e)(2)(B) makes such a reduction discretionary, not mandatory, Beeler and the BOP still have the discretion to deny Santos a sentence reduction.

Nor does the discretionary quality of the sentence reduction under § 3621 make Santos's petition moot; that is, "[a] prisoner's right to consideration for early release is a valuable one that we have not hesitated to protect." *Cort,* 113 F.3d at 1085; *see also Lindsey v. Washington,* 301 U.S. 397, 401–02, 57 S.Ct. 797, 81 L.Ed. 1182 (1937) (holding that deprivation of the opportunity to obtain a less onerous sentence is itself a burden that could constitute a denial of a prisoner's rights).

Since I have determined that I must grant the petition for a writ of habeas corpus based on Santos's argument regarding retroactivity, I need not consider his claims regarding collateral and promissory estoppel.

### III. CONCLUSION

For the reasons set forth above, I find that the BOP's determination that violations of 18 U.S.C. §§ 922(b)(5) and (d)(1) are crimes of violence is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. I also find that application of the BOP's changes in its definition of "crime of violence" to Santos after he participated in a residential drug treatment program for four months constitutes an impermissible retroactive application of an administrative regulation. Accordingly, I will grant Santos's petition for a writ of habeas corpus. I will enter an appropriate order.

### ORDER

This matter having come before the Court on the petition of Edwin Santos, *pro se,* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, of Faith S. Hochberg, Esq., United States Attorney, Dorothy Donnelly, Esq., Assistant United States Attorney, appearing on behalf of Respondent, Arthur Beeler; and,

The Court having considered the submissions of the parties, and for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 9th day of March, 1999, hereby ORDERED that the petition for a writ of habeas corpus of Petitioner, Edwin Santos, is GRANTED, and that Respondent, Arthur Beeler, shall consider Santos for a possible sentence reduction pursuant to 18 U.S.C. § 3621(e); and,

IT IS FURTHER ORDERED that the motion to compel discovery filed by Petitioner, Edwin Santos, is dismissed as moot.